[Civ. No. 49009. Second Dist., Div. One. Jan. 21, 1977.]

BENITA CLINE, Plaintiff and Appellant, v.
JAMES A. WATKINS, Defendant and Respondent.

COUNSEL

Archer Zamloch for Plaintiff and Appellant.

James A. Watkins, in pro. per., Charvet & Smith and Dennis David Smith for Defendant and Respondent.

OPINION

THOMPSON, J.—In the matter at bench, we are called upon to determine whether the substitution of new counsel who negligently fails to cure the results of negligence of prior counsel in representation of his client in pending litigation relieves the first attorney of liability. Concluding that the issue must be decided on the basis of the reasonable foreseeability of the second lawyer's failure and that foreseeability in this context is a question of fact, we reverse a judgment entered in favor of the first lawyer on his general demurrer.

Plaintiff filed her first amended complaint naming Jack D. Scott and James A. Watkins as defendants. The pleading alleges that "[d]uring a period commencing on or about January, 1969, and continuing until August 28, 1975 defendants, who at all times mentioned . . . were

attorneys at law . . . undertook to and did represent and provide legal services to plaintiff . . . and were plaintiff's attorneys of record in Los Angeles Superior Court divorce and dissolution action entitled Cline v. Cline, No. SWD 25070, and did negligently represent plaintiff and perform said legal services so as to cause plaintiff to be deprived of her community share of community property of the parties to said action in the nature of a vested pension earned by her husband during the course of the marriage between plaintiff and her husband, and to be damaged thereby in the sum of $200,000.00 plus interest thereon . . . ."

Watkins filed a general demurrer to the amended complaint. The notice of hearing on the demurrer requests the court to take judicial notice of a substitution of attorneys and the interlocutory judgment entered in the dissolution action. At hearing on the demurrer, the trial court, with the acquiescence of the parties, took judicial notice of the entire file in the dissolution proceeding.

That file discloses that Watkins, as attorney of record for plaintiff, filed a "complaint for divorce" on January 21, 1969. The complaint lists seven specific items of property claimed to be community plus a catch-all allegation of "[v]arious other items of community property, the exact nature and extent of which is unknown . . . ." Plaintiff's intention to seek leave to amend the complaint to conform to proof of additional community property at trial is stated. Plaintiff's husband answered and cross-complained.

On May 13, 1969, a substitution of attorneys was filed relieving Watkins and substituting plaintiff in propria persona in the dissolution proceedings. On May 20, 1969, Scott, as plaintiff's attorney of record, filed an answer to the cross-complaint together with a substitution of attorneys. While a declaration of plaintiff's husband filed on June 19 recites that he was receiving $376.15 per month in "Air Force Retirement pay," plaintiff's community interest in the pension was not asserted in the dissolution action. Plaintiff was awarded judgment on her complaint without reference to her community interest in the Air Force pension of her husband.

Stating: "[S]ince [Watkins] was dismissed before the OSC or the interlocutory . . ., as a matter of law . . . his negligence couldn't have caused [plaintiff] any injury," the trial court sustained Watkins' demurrer

without leave to amend. This appeal from the ensuing judgment of dismissal followed.

The trial court erred in its ruling.

■ The failure of an attorney to assert his client's community property interest in a federal pension plan supports the factual inference that the attorney was negligent in the representation of his client's interest. (*Smith* v. *Lewis* (1975) 13 Cal.3d 349, 360 [118 Cal.Rptr. 621, 530 P.2d 589], disapproved on unrelated grounds in *In re Marriage of Brown* (1976) 15 Cal.3d 838, 851 [126 Cal.Rptr. 633, 544 P.2d 561].) ■ "[A]n attorney's negligence need not be the *sole* cause of his client's loss in order to subject him to liability. That is to say, where there is causation in fact it need not be the sole proximate cause." (*Starr* v. *Mooslin* (1971) 14 Cal.App.3d 988, 1002 [92 Cal.Rptr. 583]; italics in original.)

Here the amended complaint alleges that Watkins, along with Scott, was negligent in failing to assert plaintiff's community interest in her husband's Air Force pension.[1] Here the amended complaint alleges that Watkins' negligence was a cause of plaintiff's damage. We thus reach directly the issue of whether the negligence of Scott disclosed by the file in the dissolution action to have occurred after that of Watkins is a superseding cause which as a matter of law excuses the latter from liability. (Rest.2d Torts, § 440.)

■ In general, if the risk of injury is reasonably foreseeable, the defendant is liable. An independent intervening act is a superseding cause relieving the actor of liability for his negligence only if the intervening act is highly unusual or extraordinary and hence not reasonably foreseeable. (4 Witkin, Summary of Cal. Law (8th ed.) Torts, § 628; Rest.2d Torts, §§ 435, 447.) Reasonable foreseeability in this context is a question for the trier of fact. The declaration of rules restricting the actor's responsibility for his negligence is a question of law. (Rest.2d Torts, § 453.)

---

[1]We disagree with the dissent's conclusion that as a matter of law the standard of reasonable care does not require an attorney to conduct at least a cursory investigation of the facts bearing on his client's claim to relief in the early stages of litigation. Here nothing more than a careful client interview would have disclosed the pension. In our view, the question must be treated as one of fact and not law. Otherwise, it is unduly influenced by the personal view of the practice of law held by an individual judge. What to one judge was routine preparation of litigation when he practiced law is the function of a "swami" (dis. opn., *ante*, p. 190) to another.

Restatement Second of Torts section 452 (approved by the Court of Appeal in *Fish* v. *Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620, 635-636 [128 Cal.Rptr. 807]) states: "(1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a superseding cause of such harm. [¶] (2) Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause."

■ By reason of subsection (1) of section 452, the originally negligent actor generally remains liable although a third person negligently fails to discharge a duty to take affirmative action which would have prevented the harm if the third person's conduct is reasonably foreseeable. (Coms. "a" - "c" to § 452.) Subsection (2) of Restatement Second of Torts section 452 applies only in exceptional circumstances to relieve the original actor of the foreseeable consequences of his act. In those exceptional circumstances, the duty and hence entire responsibility is shifted from the original actor to the third person. (Com. "d" to § 452.) In some circumstances, responsibility may be shifted by agreement between the actor and the third person. (Com. "e" to § 452.) In the absence of agreement, "the circumstances may be such that the court will find that all duty and responsibility for the prevention of the harm has passed to the third person." (Com. "f" to § 452.)

Here the trial court treated Watkins as absolved from liability for negligence as a matter of law because of the failure of Scott to prevent the harm ordinarily flowing from Watkins' negligence from occurring. The issue having been resolved as a matter of law and not by a trier of fact on the question of foreseeability, we are required to determine the applicability of subsection (2) of section 452 of the Restatement Second of.Torts to the situation of the case at bench.

Applicability of subsection (2) turns upon an issue of public policy not previously considered in California. ■ Is the substitution of another lawyer for one whose prior representation of the client in the matter has been negligent such an exceptional circumstance that all duty and responsibility for the prevention of harm normally flowing from the negligence passes to substituted counsel?

We conclude that the policy question must be answered in the negative.

Except for a still developing certification of a few specialties, the bar supplies no means of assessing the qualifications of its members. A member of the public seeking the services of a lawyer thus has no real means of determining his capability. Nor has a member of the public engaging the services of a lawyer any real means of gauging the quality of service performed. Where a lawyer originally retained is relieved and another substituted, the client is likely to have some general dissatisfaction with the quality of service of the original lawyer but is unlikely to be aware of any specific reason for the dissatisfaction although a legitimate reason exists. The same lack of means to assess lawyer quality which results in the retention of a negligent lawyer in the first instance may well result in his being replaced by another negligent lawyer when the client acquires the vague uneasiness that the first is not doing what he should.

In these circumstances, lawyers are not entitled to special treatment in the form of special relief from the consequences of their negligence that is not afforded other professions. As a negligent physician is not relieved of the consequences of his lack of care because a subsequently treating physician could have avoided the injury had he not also been negligent (*Fish* v. *Los Angeles Dodgers Baseball Club, supra,* 56 Cal.App.3d 620), so also should a negligent lawyer not be relieved because he is replaced by another. True enough, the new lawyer assumes full responsibility for the matter and has exclusive control over it; but so also does the new physician assume full responsibility and have full control.

■ We thus conclude that the case at bench is governed by the tenets of subsection (1) rather than subsection (2) of section 452 of the Restatement Second of Torts. The issue of the proximate causation of damage flowing from Watkins' negligence is thus one of foreseeability to be determined by the trier of fact and not on demurrer.

The judgment is reversed.

Lillie, Acting P. J., concurred.

**HANSON, J.**—I dissent.

As described in the majority opinion in the case at bench plaintiff/appellant Benita Cline (hereinafter Wife) appeals from the trial court's sustaining defendant/respondent James A. Watkins' (hereinafter Attorney Watkins) general demurrer to Wife's first amended complaint for

alleged legal malpractice. Wife's claim of malpractice is based on her assertion that Attorney Watkins negligently represented her as plaintiff in a divorce action (Benita Gannon Cline v. Robert Harry Cline, superior court No. SWD 25070) which deprived her of her community share of her husband's Air Force retirement pay.

Attorney Jack D. Scott (hereinafter Attorney Scott), who later represented Wife in the underlying divorce action, is also a named defendant in the instant legal malpractice suit but is not a party to this appeal.

### THE UNDERLYING DIVORCE ACTION

Pursuant to rule 12(a) of the California Rules of Court, the file of Benita Gannon Cline v. Robert Harry Cline, No. SWD 25070, of which the court below in the malpractice case took judicial notice, has been ordered up and reviewed. It, in pertinent part, reflects the following:

*On January 21, 1969,* Attorney Watkins filed a complaint for divorce for Wife against her husband, Robert Harry Cline (hereinafter Husband). Paragraph V of the complaint listed as community property the home and furnishings, three automobiles, one hundred shares of stock, and various insurance policies. Husband's Air Force retirement pension was not listed but paragraph V concludes as follows: "(8) *Various other items of community property, the exact nature and extent of which is unknown to plaintiff at this time, and plaintiff will therefore ask leave of Court to amend her complaint to conform to proof at the time of Trial."* (Italics added.)

*On May 1, 1969,* counsel for defendant Husband filed an answer to complaint and a cross-complaint for divorce which were served on Attorney Watkins.

*On May 13, 1969,* plaintiff Wife appearing "in pro per" filed a substitution of attorney declaring she "hereby substitutes herself In Pro Per . . . as attorney(s) of record in place and stead of JAMES A. WATKINS." The substitution of attorney shows that on April 17, 1969, it was signed by Wife, consented to by Attorney Watkins, and that the "Above substitution [was] accepted" by Wife.

*On May 20, 1969,* another substitution of attorneys was filed which stated "Plaintiff and Cross-Defendant BENITA GANNON CLINE hereby substitutes JACK D. SCOTT, . . ., as attorney of record in place and

stead of herself, In Pro Per," which "substitution [was] accepted" by Attorney Scott.

*On June 10, 1969,* the order to show cause (OSC) re attorney fees, costs, alimony, etc. and restraining order was continued to June 19, 1969, by stipulation of counsel.

*On June 19, 1969,* the OSC was heard and the order included an award of $300 as attorney's fees for Attorney Scott. On the same date (*June 19, 1969*) a document entitled declaration of husband on order to show cause (dated and signed June 6, 1969) was filed with the court showing Husband had additional income of $376.15 a month from Air Force retirement pay, which coupled with $1,452.65 monthly net take-home pay aggregated a total monthly income of $1,828.80. (It is the $376.15 monthly Air Force retirement pay which is involved in the case at bench.)

*On June 25, 1969,* an at-issue memorandum was filed by Husband's counsel showing Attorney Scott as attorney for plaintiff Wife.

*On June 30, 1969,* a certificate of readiness was filed signed by the attorneys of record which included the signature of Attorney Scott.

*On July 10, 1969,* notice of assignment of trial or hearing date was filed and mailed to counsel, including Attorney Scott, by the clerk of the court.

*On July 14, 1969,* counsel for Husband served by mail on Attorney Scott a notice of trial. The trial was set for October 21, 1969.

*On August 29, 1969,* Attorney Scott, Wife's attorney of record, filed and served interrogatories propounded to defendant Robert Harry Cline, which were primarily directed at ascertaining outstanding obligations of the community property. The answers to interrogatories were filed September 24, 1969.

*On October 21, 1969,* the court minute order shows, by stipulation, the trial was continued to November 18, 1969. "Counsel for Plaintiff [Wife] Jack D. Scott."

*On November 18, 1969,* the trial commenced with Attorney Scott as the sole attorney of record for plaintiff Wife. On the same date the court file reflects another declaration of Husband on order to show cause was filed

showing $375.16 as "other income" but not indicating the "source" as Air Force retirement pay as reflected in the same form filed at the OSC hearing on June 19, 1969.

*On December 8, 1969,* plaintiff Wife was granted an interlocutory judgment of divorce and all other matters were taken under submission. A subsequent order of January 26, 1970, disposed of the community property without mention of the Air Force retirement pay and additional attorneys' fees were awarded to Attorney Scott in the sum of $1,615.[1]

*On April 28, 1970,* an interlocutory judgment of dissolution of marriage was signed by the court and filed.

### The Legal Malpractice Action at Bench

Attorney Watkins' general demurrer in the case at bench requested the court to take judicial notice of the original file in the dissolution proceedings. The trial judge's attention was particularly directed to: (1) the substitution of attorneys executed on April 17, 1969, and filed May 13, 1969, by which Wife, in propria persona, was substituted in place and stead of Attorney Watkins as attorney of record for Wife; (2) the substitution of attorneys filed May 20, 1969, wherein Attorney Scott became attorney of record for Wife; and (3) the interlocutory judgment of dissolution of marriage filed on April 28, 1970. The court was requested to take judicial notice of these documents pursuant to Evidence Code sections 452 and 453.

The trial court determined after reviewing the superior court file that since defendant Attorney Watkins was dismissed as Wife's counsel prior to the hearing on the OSC that his (Watkins') negligence if any was not the proximate cause of Wife's claimed injury as a matter of law.[2]

---

[1] The record is silent as to the fee received by Attorney Watkins, if any.

[2] Following is colloquy contained in the reporter's transcript of the hearing on defendant Attorney Watkins' general demurrer conducted on April 28, 1976:
"THE COURT: How long was Watkins in the saddle?
"[Defense attorney]: Watkins was in—
"[Plaintiff's attorney]: Four months, I believe, Your Honor.
"[Defense attorney]: Watkins was in from January '69 to May '69, four months approximately, and then six months more approximately lapsed before the actual trial was in December.
"Now, it seems to me that when a lawyer is relieved, substituted out, he is discharged. If you want to make an analogy to a medical malpractice, if you go to a

On appeal Wife contends the trial court erred in sustaining Attorney Watkins' general demurrer and that his negligence in failing to advise her of her community interest in Husband's military pension and in

---

physician for a sore throat and tell the physician you have a sore throat and the physician treats you and then you say, I don't like what you did, you are discharged, and then you go to another physician, the first physician has no responsibility.

"THE COURT: He might have. Supposing he put, instead of zinc oxide, he put in some kind of acid or something in his throat.

"[Defense attorney]: If that was shown to be a cause of the injury, yes. But there is nothing in these pleadings. There is nothing to show that was the cause of the failure of Scott to prove, or the court to include, whatever it was, any disposition of this item.

"THE COURT: Still certainly if he had listed it, it would have brought it to Scott's attention, wouldn't it?

"[Defense attorney]: If he knew about it.

"THE COURT: If Watkins had put it in his complaint.

"[Defense attorney]: If Watkins had put it in his complaint, that's true, but there is something that shows that Scott knew about it.

"THE COURT: Well, were there any interrogatories?

"[Defense attorney]: Yes. I will show you what they were. One second, please. In the declaration of the husband on the Order to Show Cause.

"THE COURT: What was that again, please?

"[Defense attorney]: In the declaration of husband on Order to Show Cause which was filed June 19, 1969, after Watkins was relieved. He was relieved in May. The husband files a declaration of husband in Order to Show Cause and says, 'If you have any other income, state how much and from what source. Otherwise, state none.'

"He says, 'Week, $376.00, net aggregate monthly total of $1,828.00. Source, Air Force retirement pay.'

"That's what we are talking about, isn't it, counsel?

"[Plaintiff's attorney]: Yes, yes.

"[Defense attorney]: So that when Mr. Scott represented this lady on the Order to Show Cause, that was June 19, 1969, and the hearing on the Order to Show Cause to place on June 19, 1969, counsel, Mr. Scott, was aware of this Air Force retirement. He had to be because he tried literally that day this Order to Show Cause based on this declaration.

"Now, let me see just one second.

"THE COURT: Well, is there anything else, gentlemen? I have to rule on these matters. I always do rule.

"[Defense attorney]: All I can see, Your Honor, is—

"THE COURT: There's no cases except by analogy.

"[Defense attorney]: Well, there is one case—

"THE COURT: I will rule that the demurrer is sustained without leave to amend.

"[Defense attorney]: Thank you, Your Honor.

"THE COURT: And that way you've got—

"[Plaintiff's attorney]: Going to appeal.

"THE COURT: You've got a sharp thing to put up.

"[Plaintiff's attorney]: May we state the grounds, also?

"THE COURT: Yes.

"[Plaintiff's attorney]: That the intervening negligence, alleged negligence of Scott exonerates any negligence on the part of the defendant Watkins during the time he represented.

"[Defense attorney]: I think it's more likely that Watkins was discharged by the substitution of attorneys and that there is no showing that anything he did constituted negligence or cause.

failing to protect that interest during the time he represented her constituted a concurrent proximate cause of her loss.

## DISCUSSION

In the case at bench the trial court properly took judicial notice of the superior court file in the underlying divorce action (SWD 25070) not only by reason of the statutory mandate of Evidence Code sections 452[3] and 453[4] but by case law permitting such consideration when ruling on a general demurrer.

In sustaining a general demurrer as in granting a motion for judgment on the pleadings, the trial court in addition to accepting the allegations in the pleadings as true may look into various outside matters under the doctrine of judicial notice (*Alford* v. *Hesse* (1929) 100 Cal.App. 66 [279 P. 831]) including court files (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 630 [99 Cal.Rptr. 393], cert. den. by Supreme Ct. Feb. 23, 1972; see also 4 Witkin, Cal. Procedure (2d ed. 1971) Proceedings Without Trial, §§ 161, 162, 176, 177, pp. 2816-2818, and 2828-2830).

---

"THE COURT: Well, it's an allegation, isn't it? Not showing really.

"[Plaintiff's attorney]: We allege that he was negligent and—

"THE COURT: And I am saying that since he was dismissed before the OSC or the interlocutory that he couldn't, as a matter of law he, his negligence couldn't have caused her any injury.

"[Plaintiff's attorney]: I don't know that he was dismissed before the OSC, Your Honor.

"[Defense attorney]: Yes, he was, This file shows. Would the court show that it is taking judicial notice of file SW D 25070?

"THE COURT: Yes. There you have the matter squarely before you."

[3]Evidence Code section 452 provides, in pertinent part, as follows:

"Judicial notice may be taken of the following matters to the extent that they are not embraced within Section 451:

"(a) The decisional, constitutional, and statutory law of any state of the United States

". . . . . . . . . . . . . . .

"(d) Records of (1) any court of this state . . .

". . . . . . . . . . . . . . .

"(g) Facts and propositions that are of such common knowledge within the territorial jurisdiction of the court that they cannot reasonably be the subject of dispute.

"(h) Facts and propositions that are not reasonably subject to dispute and are capable of immediate and accurate determination by resort to sources of reasonably indisputable accuracy."

[4]Evidence Code section 453 provides, in pertinent part, that "The trial court *shall* take judicial notice of any matter specified in Section 452 if a party requests it . . ." (Italics added.)

Moreover, "[I]t is the rule that where the facts are not in dispute, and the nature of plaintiff's claim is clear, but under the substantive law no liability exists and no amendment would change the result, the sustaining of a demurrer without leave to amend is proper. [Citations.]" (*City of Ceres* v. *City of Modesto* (1969) 274 Cal.App.2d 545, 554 [79 Cal.Rptr. 168].)

The elements necessary to establish legal malpractice sounding in tort are the same as those for any negligence action: (1) duty, (2) breach of that duty, (3) proximate cause, and (4) damage. (See *Neel* v. *Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176 [98 Cal.Rptr. 837, 491 P.2d 421]; *Chavez* v. *Carter* (1967) 256 Cal.App.2d 577 [64 Cal.Rptr. 350].)

"In any negligence action the existence of a duty of care owed by the defendant to the plaintiff is a question of law for the court. (*Amaya* v. *Home Ice etc. Co.,* 59 Cal.2d 295, 307-308 [29 Cal.Rptr. 33, 379 P.2d 513].) If a duty exists, the complementary degree of care exacted of the defendant—usually that of a reasonable man of ordinary prudence in a like situation—is also declared by law. (Prosser on Torts (3d ed.) pp. 153, 207; Rest.2d Torts, § 328B.) Breach of duty is usually a fact issue for the jury; if the circumstances permit a reasonable doubt whether the defendant's conduct violates the boundaries of ordinary care, the doubt must be resolved as an issue of fact by the jury rather than of law by the court. (*Warner* v. *Santa Catalina Island Co.,* 44 Cal.2d 310, 318 [282 P.2d 12]; *Mosley* v. *Arden Farms Co.,* 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 782].) Given a breach of duty by the defendant, the decision whether that breach caused the damage (that is, causation in fact) is again within the jury's domain; but where reasonable men will not dispute the absence of causality, the court may take the decision from the jury and treat the question as one of law. (*Basin Oil Co.* v. *Baash-Ross Tool Co.,* 125 Cal.App.2d 578, 603 [271 P.2d 122]; see 2 Witkin, Summary of Cal. Law (1960) 1483-1484; Rest.2d Torts, § 434; Prosser, *Proximate Cause in California,* 38 Cal.L.Rev. 369, 375-383, 420-421.)" (*Ishmael* v. *Millington* (1966) 241 Cal.App.2d 520, 525-526 [50 Cal.Rptr. 592].)

In the case at bench when Attorney Watkins undertook to represent Wife in her contested divorce proceedings he assumed a duty of care toward her. "Described in terms traditionally applicable to the attorney-client relationship, the degree of care exacted by that duty was that of a figurative lawyer of ordinary skill and capacity in the performance of like

tasks. (*Lucas* v. *Hamm, supra,* 56 Cal.2d at p. 591.)" (*Ishmael* v. *Millington, supra,* 241 Cal.App.2d at p. 526.)

However, I am aware of no authority, constitutional, statutory, or judicial, which places on an attorney representing a plaintiff in a contested divorce action the *duty* (which is a question of law) of definitively deciding what is or is not community property or listing it in the complaint during the time period Attorney Watkins represented Wife in the instant case. The ultimate objective of such litigation is to obtain a court order adjudicating the separate and community character of the marital property and its disposition.

Here, in accordance with accepted practice in the legal profession Attorney Watkins incorporated a general protective allegation in the complaint, namely: "[V]arious other items of community property, the exact nature and extent of which is unknown to plaintiff at this time, and plaintiff will therefore ask leave of Court to amend her complaint to conform to proof at the time of Trial."

After he (Attorney Watkins) was substituted out as attorney of record on May 13, 1969, he had absolutely no control over the case and was a complete "stranger" to all subsequent proceedings which culminated in the interlocutory judgment of divorce.

The majority opinion reverses the trial court's ruling on the stated ground that "reasonable foreseeability of the second lawyer's [Attorney Scott] failure and that foreseeability in this context is a question of fact." Apparently that conclusion is based on its determination that subsection (2) of Restatement Second of Torts section 452 is inapplicable, which determination "turns" on "public policy not previously considered in California."

I respectfully disagree with certain aspects of the public policy argument upon which the majority opinion "turns" and its result.

Certainly no one can quarrel with the proposition that "lawyers are not entitled to special treatment in the form of special relief from the consequences of their negligence that is not afforded other professions" as stated in the majority opinion. However, it (the majority opinion) fails to acknowledge and take into consideration some very basic differences inherent in the nature of litigation, including divorce litigation, in which practicing attorneys are engaged and the inherent nature of the duties

and services performed by "other professions" including the medical profession with which it draws an analogy. By the nature of the litigation beast, the duties, mode of functioning, timing, objectives, and relationships of an attorney engaged in litigation vis-a-vis his clients vary markedly from that of a medical practitioner to his patients. With the good of the general public foremost in mind, I fail to see the wisdom of rushing the legal profession into the same unseaworthy boat in which the medical profession finds itself about to capsize. The public is saddled with exorbitant medical charges driven up by numerous expensive medical tests ordered by doctors and by high insurance premiums which doctors pay by reason of actual or threatened medical malpractice suits.

In the instant case the trial court did not afford "special treatment" to Attorney Watkins but only afforded "fair and equal treatment" by applying well recognized legal principles and rules of procedure in light of the total circumstances of the case in a common sense and realistic manner. Attorney Watkins, as any defendant in any lawsuit, was entitled to seek a dismissal from the malpractice action as soon as possible, if entitled to one, in order to avoid the expenditure of unnecessary time and expense. He filed a general demurrer to the Wife's first amended complaint requesting the court to take judicial notice of the underlying divorce action file (SWD 25070 hereinbefore described in some detail) pursuant to Evidence Code sections 452 and 453 which was properly sustained.

Moreover, the case of *Fish* v. *Los Angeles Dodgers Baseball Club* (1976) 56 Cal.App.3d 620 [128 Cal.Rptr. 807], referred to in the majority opinion as it bears on concurrent or superseding negligence is clearly factually distinguishable from the case at bench.[5]

---

[5]In *Fish* plaintiffs' son was struck in the head by a foul ball while watching a major league baseball game and was rendered unconscious for about a minute. The boy was treated by the doctor in the emergency first aid station at the stadium. He, after a brief examination, advised plaintiff that he had a bump on the head but appeared to be all right and that he could return to his seat. That night the boy was admitted to the hospital and died four days later of intracerebral hemorrhage. In the wrongful death action brought against the baseball club and the doctor operating its emergency medical facility, plaintiffs' experts testified that the doctor was negligent in treating decedent, and that his failure to immobilize decedent during the period immediately following his injury probably prevented the hemorrhage from spontaneously stopping as the result of the body's normal healing processes. Plaintiffs' experts also testified, however, that decedent could have been saved by emergency surgery after being admitted to the hospital. Such surgery was never performed. Defense counsel urged that the hospital's negligence in not performing the surgery was the legal cause of decedent's death, and not any negligence on behalf of the defendant emergency medical facility doctor. Plaintiffs' request for an instruction that the intervening conduct of the hospital contributing to

Any analogy between the action or nonaction of a doctor in an emergency situation where the patient has suffered a head injury (as in *Fish*) and an attorney who was involved in the lengthy, protracted contested divorce litigation and only filed a complaint, which protected the community property issues, before he was substituted out of the case would be most strained.

In addition, *Smith* v. *Lewis* (1975) 13 Cal.3d 349 [118 Cal.Rptr. 621, 530 P.2d 589] (Justices Clark and McComb dis.), a legal malpractice suit, is also clearly distinguishable from the case at bench.[6]

Here the superior court file of the underlying divorce action shows: (1) that it was not an uncontested divorce action but a hotly contested one; (2) that Attorney Watkins only filed a complaint which protected the community property issues and was substituted out as attorney of record a few days after the pleadings were at issue; and (3) that Attorney Scott (except for a few days in which Wife appeared "in pro per") was the attorney of record and represented Wife at the OSC, undertook discovery, and also represented her at the trial which resulted in the interlocutory decree of divorce.

Some members of the family law bar have construed *Smith* v. *Lewis, supra,* 13 Cal.3d 349, as telling them they were all retroactively guilty of malpractice.[7]

---

decedent's death was no defense to defendants' liability for negligence was denied. The jury subsequently returned a verdict in favor of defendants.

The appellate court in reversing held that the claimed negligence of the defendant emergency medical facility doctor and the hospital were concurrent causes of decedent's death, and that it was no defense to plaintiff's claim based on defendant's negligence that the conduct of the hospital was also a substantial factor contributing to decedent's death and the trial court erred in refusing the requested instruction pertaining to concurrent causation.

[6]In *Smith* plaintiff wife had retained defendant Attorney Lewis to handle her *uncontested* divorce action in February 1967. *Attorney Lewis represented her throughout the proceedings.* He filed the complaint and later obtained the interlocutory decree. Plaintiff wife in her malpractice suit against Attorney Lewis claimed he failed in the marriage dissolution proceedings to assert her community interest in her husband's federal and state retirement benefits derived from military service in the California National Guard. In affirming a jury verdict in the sum of $100,000 in favor of wife, the California Supreme Court in 1975 stated in respect to the federal benefits that although "substantial uncertainty may have existed in 1967 with regard to the community character of General Smith's *federal* pension" (italics in original) (13 Cal.3d at p. 357) the "federal [military retirement] benefits at least arguably belonged to the community" (p. 360) and should have been pressed.

[7]See 1 California Family Law Report, No. 1 (Jan. 3, 1977) Comment at page 1010.

The majority opinion in the case at bench could be construed as telling them that they must also, retroactively and prospectively, be swamis with soothsaying capability as to the competency of subsequent counsel without a say in the selection of subsequent legal representation. They can be relieved as attorneys of record at any time at the sole discretion of their clients, with or without cause, and have no say whatsoever in the selection of subsequent counsel, as present here.

I would also take judicial notice of the fact "not reasonably subject to dispute" (Evid. Code, § 452, subds. (g) and (h)) that the vast majority of the over 45,000 practicing attorneys in California represent their clients in a competent and nonnegligent manner and that negligent conduct is the rare exception as evidenced by the paucity of legal malpractice actions compared to the multitude of legal matters handled.

In summary, we have the following situation: Attorney Watkins protected the issue in the complaint he filed before he was substituted out; he had no say in the selection of and was not in privity with the subsequent attorney; he was a complete stranger to and had no control or participation in the OSC and the trial which culminated in the interlocutory decree of divorce.

By reason of the above, I conclude that Attorney Watkins could not reasonably foresee the failure, if any, of the subsequent attorney (Attorney Scott) to properly protect the community interest of Wife in Husband's federal military retirement pension; that the alleged negligence of Attorney Scott, if any, constituted an independent intervening (superseding) course which insulates Attorney Watkins from liability; and that the instant case is one "where reasonable men will not dispute the absence of causality" (*Ishmael* v. *Millington, supra,* 241 Cal.App.2d 520, 526).

I would therefore hold the trial court properly sustained his general demurrer without leave to amend as a matter of law.

Accordingly, by reason of the foregoing I would affirm the judgment (order of dismissal).