Filed 6/24/14; pub. order 7/22/14 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LILAS MOUA, | B251787 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC471183) |
| v. | |
| PITTULLO, HOWINGTON, BARKER, ABERNATHY, LLP et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County. Joseph R. Kalin, Judge. Affirmed.

OsbornLaw, Richard G. Osborn and Blair J. Berkley for Plaintiff and Appellant.

Nemececk & Cole, Jonathan B. Cole, Claudia L. Stone, and Mark Schaeffer for Defendants and Respondents.

Lilas Moua (appellant) appeals from a judgment entered after the trial court granted summary judgment in favor of Pittullo, Howington, Barker, Abernathy, LLP; P. Timothy Pittullo (Pittullo) and Jonathon A. Zitney (Zitney) (collectively respondents) on appellant's claim against respondents for legal malpractice. We affirm.

## FACTUAL BACKGROUND

Appellant was born and educated in the United States. She began living with Alex Ng (Ng) in 1998. Appellant and Ng participated in a traditional Hmong marriage ceremony in February 2000.[1] Ng paid a dowry, and they lived together as husband and wife. Ng signed numerous formal documents and filed tax returns indicating he was married. The couple had two children together. Appellant believed she was married to Ng. Ng informed appellant that he would take care of any papers or documents that were needed with respect to the marriage. However, no marriage license was ever obtained.

On April 9, 2009, appellant retained respondents to assist her in obtaining a property settlement and child support from Ng. On April 23, 2009, respondents filed a petition for dissolution of marriage in the matter captioned *Moua v. Ng*, San Bernardino County Superior Court case No. FAMRS 901291 ("family law case"). Pittullo represented to appellant that there was a 50 percent chance that the family court would find her to be Ng's putative spouse.[2] Pittullo further represented to appellant that she could win $1.5 to $2 million if the family court determined that she was Ng's putative spouse. Pittullo also advised appellant that if she did not prevail on her putative spouse

---

[1] "The Hmong are an Asian ethnic group from the mountainous regions of China, Vietnam, Laos, and Thailand." (<http://en.wikipedia.org/wiki/Hmong_people>.)

[2] "'Under the equitable putative spouse doctrine, a person's reasonable, good faith belief that his or her marriage is valid entitles that person to the benefits of marriage, even if the marriage is not, in fact, valid.' [Citation.]" (*In re Marriage of Tejeda* (2009) 179 Cal.App.4th 973, 980.)

claim, she could file a civil action pursuant to *Marvin v. Marvin* (1976) 18 Cal.3d 660 (*Marvin*), along with a paternity action.[3]

In August 2009, appellant instructed respondents to stop work because she and Ng were negotiating a settlement. In August and September 2009, respondents communicated with appellant regarding the status of the settlement negotiations. In late August 2009, appellant informed respondents that she and Ng had reached a settlement, which included a one-time payment of $550,000. Ng later offered to enter into a stipulated judgment in the family law case providing, in part, that Ng would pay the sum of $550,000 to appellant.

In a letter dated October 30, 2009, Zitney informed appellant that there were significant risks involved with trying the putative spouse issue, and informed her that if she were to lose that issue, she could walk away with nothing.

In a letter dated April 27, 2010, Pittullo wrote to appellant informing her of his "strong" recommendation that she accept Ng's settlement offer of $550,000. Pittullo wrote: "Considering that you have a 50% chance of losing and walking away from $500,000, we have recommended that you accept the offer. However, the final decision is yours to make."

Appellant did not accept Ng's offer. On May 6, 2010, appellant advised respondents to stop working on the settlement because she was not interested in settling. On May 14, 2010, Pittullo sent appellant a letter indicating that because appellant expressly agreed to a judgment in court, and the court asked that such a judgment be drafted and presented, respondents were still drafting the agreement pursuant to the court's directive. Pittullo indicated that the court may have "significant issues" with appellant's decision to renege on the agreement.

---

[3]     In *Marvin*, the California Supreme Court held that unmarried adults who live together are free under general principles of contract law to make agreements concerning their property and earnings.

3

On May 28, 2010, Ng's attorney, Howard D. Pilch, faxed respondents the negotiated attachment to judgment signed by Ng. It provided, in part, for payments totaling $605,000.

On June 1, 2010, appellant emailed respondents with a request to postpone all court dates on her case. On June 2, 2010, respondents sent appellant a copy of the attachment to judgment for her review.

On June 4, 2010, appellant retained Stolar & Associates (Stolar) to represent her in the family law case. On June 7, 2010, Pittullo received a letter from Evan Bardo of Stolar indicating that appellant had retained Stolar and enclosing a substitution of attorney signed by appellant. The same day, Zitney sent an email to appellant's new counsel with the attachment to judgment signed by Ng. On June 10, 2010, Pittullo sent Stolar the signed substitution of attorney, which was filed with the court that day. Appellant did not enter a settlement agreement while represented by respondents.

On June 18, 2010, Steven L. Finston of Stolar wrote appellant a letter advising her to accept the $605,000 settlement offer. Finston indicated his opinion that appellant's chances of winning the putative spouse issue were "far lower" than 50/50. Appellant did not accept the offer. Instead she offered to settle for $750,000. Ng declined.[4] Ultimately, Ng's motion to dismiss the family law case was granted on the ground that appellant was not a putative spouse, and appellant received nothing from Ng.

## PROCEDURAL HISTORY

Appellant filed the present legal malpractice lawsuit against respondents and Stolar, among others, on October 7, 2011. Appellant's fourth amended complaint was filed October 15, 2012. It alleged one cause of action against respondents for legal malpractice.

On November 5, 2012, respondents filed their motion for summary judgment. In it, they argued that there was no proximate causal connection between the alleged breach

---

[4] Appellant's counsel insisted at oral argument that it was Ng who made the $750,000 offer. On the contrary, the record reveals that it was appellant who made the offer, which Ng declined.

4

and appellant's injury due to the fact that appellant's case was taken over by new attorneys prior to the conclusion of the matter. Further, respondents argued that appellant's claim was barred by the one-year statute of limitations found in Code of Civil Procedure section 340.6.

The motion was heard on August 15, 2013, and the matter was taken under submission. On August 20, 2013, the trial court issued an order granting the motion. The court explained its conclusion that "[t]here are no triable issues of material fact to show any causation of alleged damages caused by [respondents'] conduct. [Respondents] recommended that [appellant] accept the settlement offers." Judgment in favor of respondents was entered on September 13, 2013.

On October 2, 2013, appellant filed her notice of appeal.

## DISCUSSION

### I. Standard of review

The standard of review for an order granting or denying a motion for summary judgment or adjudication is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 (*Aguilar*).) The trial court's stated reasons for granting summary relief are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878.)

A party moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar, supra*, 25 Cal.4th at p. 850, fn. omitted.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.) "A defendant bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. [Citation.]" (*Ibid.*)

Generally, "the party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing

5

party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.]" (*Aguilar, supra*, 25 Cal.4th at pp. 850-851, fn. omitted.)

## II. Elements of legal malpractice cause of action

"In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.]" (*Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1199.) Significantly, "'[i]f the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] . . .' [Citation.]" (*Baltins v. James* (1995) 36 Cal.App.4th 1193, 1202.)[5]

In the present matter, appellant argues that respondents' representation that there was a 50 percent chance that the family court would find her to be the putative spouse of Ng caused her to decline Ng's settlement offers of $550,000 and $605,000. Appellant asserts that she was damaged when the family law matter was dismissed and she recovered nothing.

---

[5] Reasonable reliance is not an element of the tort of legal malpractice, therefore we decline to address in detail appellant's discussion of this concept. However, we note that appellant attempts to argue that it is never possible to conclude that a plaintiff's reliance on a representation was unreasonable without stepping into the role of the trier of fact and weighing the evidence. This position is incorrect. Appellant cites only one case, which is not controlling authority: *Hoyt Props. v. Production Res. Group, L.L.C.* (Minn. 2007) 736 N.W.2d 313, 321. Appellant completely ignores the substantial body of California law on the topic of reasonable reliance. In California, the question of "whether a party's reliance was justified may be decided as a matter of law if reasonable minds can come to only one conclusion based on the facts. [Citation.]" (*Guido v. Koopman* (1991) 1 Cal.App.4th 837, 843; see also *Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 54 ["'If the conduct of the plaintiff in the light of his own intelligence and information was manifestly unreasonable, . . . he will be denied a recovery'"].)

**III.  Respondents' burden:  the nonexistence of a triable issue of material fact**

In their motion for summary judgment, respondents argued that there was no triable issue of material fact as to proximate causation.  "[T]he question of proximate cause . . . becomes one of law where the facts are uncontroverted and only one deduction or inference may reasonably be drawn therefrom.  [Citations.]"  (*Whinery v. Southern Pac. Co.* (1970) 6 Cal.App.3d 126, 128.)

Respondents point out that they recommended to appellant that she settle the case, advised her that there was significant risk in trying her case, and warned her that she could walk away with nothing if she lost the putative spouse issue.  Respondents negotiated a stipulated judgment providing that Ng would pay appellant $605,000, which Ng signed.  Respondents urged appellant to accept the settlement.  Shortly thereafter, appellant retained new counsel, who also recommended that appellant accept the $605,000 offer.  In spite of both counsels' recommendations, appellant rejected the settlement.  Based on these undisputed facts, respondents take the position that it was appellant's own actions, in rejecting her attorneys' advice, which was the direct cause of her damage.

In addition, respondents argue that appellant's retention of subsequent counsel (Stolar), who independently advised appellant about Ng's offer of $605,000, broke the causal chain between respondents and appellant.  In support of this argument, respondents cite several cases.  The first, *Steketee v. Lintz, Williams & Rothberg* (1985) 38 Cal.3d 46 (*Steketee*), involved a plaintiff who claimed that the defendant law firm and two of its members negligently failed to file an action for medical malpractice on plaintiff's behalf within the limitations period.  (*Id.* at p. 50.)  However, the attorney-client relationship between plaintiff and defendants was terminated in January 1979, and the plaintiff's cause of action for medical malpractice did not expire until September 1979.  (*Id.* at p. 57.)  The Supreme Court concluded, "An attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action.  [Citations.]"  (*Ibid.*; see also *Stuart v. Superior Court* (1992) 14

7

Cal.App.4th 124, 127 [attorney "entitled to summary judgment because he was not the attorney of record for [plaintiff] at the time his former client is alleged to have lost the right to pursue the personal injury action"].) Similarly, respondents argue, an attorney cannot be held liable for a client's failure to accept a settlement when the attorney ceases to represent the client and is replaced by other counsel while the settlement offer is still open.

Respondents also rely upon *Filbin v. Fitzgerald* (2012) 211 Cal.App.4th 154 (*Filbin*). *Filbin* is a "settle and sue" case, "which involves a former client suing after litigation has been settled. Depending on whether the disgruntled client was the plaintiff or the defendant in the antecedent lawsuit, the basis of the claim is that the settlement was less than it should have been, or more than it had to be, by reason of the negligence of the party's attorney." (*Id.* at p. 157.) In *Filbin*, the trial court awarded former clients more than half a million dollars for malpractice by their former attorney. The Court of Appeal reversed, "concluding that as a matter of law there [was] no causal connection between the attorney's assertedly negligent acts and omissions and the amount the clients received when they settled." (*Ibid.*)

The matter involved an eminent domain proceeding initiated by San Luis Obispo County against the Filbins. An appraiser hired by Fitzgerald, the Filbins's attorney, appraised the property at $4,535,000. However, Mr. Filbin, a former real estate broker, believed the property was worth between $12 million and $15 million. (*Filbin, supra*, 211 Cal.App.4th at p. 159.) Fitzgerald advised the Filbins that they were required to make a final settlement offer under the mandatory settlement provisions found in Code of Civil Procedure section 1250.410. He also informed them that the law generally requires that the property owner make a settlement demand in a figure less than the appraisal opinion. (*Id.* at pp. 159-160.) This statement was incorrect, as no authority requires such a reduced demand. (*Id.* at p. 168.)

However, the Court of Appeal pointed out that "attorney breaches of the standard of care are not per se actionable. [Citations.]" (*Filbin, supra*, 211 Cal.App.4th at pp. 169-170.) The court concluded that "nothing Fitzgerald did, or did not do, up to the time

8

he departed as the Filbins' counsel caused the Filbins to do anything to their detriment." (*Id*. at p. 170.) Indeed, the trial court noted, the Filbins refused to follow his advice and refused to lower their demand to the amount stated by the appraiser. (*Ibid*.) Thereafter, they acquired new counsel, and it was with that new attorney's impartial advice that they proceeded. The court concluded, "Their decision to settle was theirs and theirs alone, made with the assistance of new counsel, with no input from Fitzgerald. The consequences of that decision are likewise theirs alone." (*Id.* at p. 171.)

Similarly, respondents argue, appellant refused to follow their advice and accept Ng's settlement offer. Thereafter, appellant acquired new counsel, and it was with her new counsel's impartial advice that she proceeded. Appellant's ultimate decision not to settle, in spite of her attorneys' advice that she do so, was hers alone, and the consequences of that decision are likewise hers alone.[6]

We find that the cases cited by respondents support their position that there is no triable issue of material fact as to causation. Appellant disregarded respondents' advice to accept the initial settlement offer from Ng. Appellant retained new counsel while Ng's offer of $605,000 was still pending. Appellant's new counsel also strongly encouraged her to accept the settlement. It was her own decision, against the advice of her attorneys, to decline. No causal connection exists between any alleged malpractice and appellant's loss as a matter of law.

---

[6] Appellant attempts to distinguish *Filbin* on the ground that it was a "settle and sue" case. Here, appellant argues, there was no settlement. Appellant is suing because she declined Ng's settlement offers to her substantial detriment. We find this factual distinction to be insignificant under the circumstances. Appellant is complaining of essentially the same thing: she got less than what she could have.

Appellant also attempts to distinguish *Filbin* because the Filbins rejected Fitzgerald's advice. Appellant insists: "Obviously, after the Filbins **rejected** Fitzgerald's advice and hired new counsel, there could be no reliance on Fitzgerald or causation." However, the facts here show that appellant did exactly the same thing: she rejected respondents' advice to accept Ng's settlement offer, then hired new counsel. Following appellant's own logic, there can be no reliance or causation under these facts.

**IV. Appellant has failed to show the existence of a triable issue of material fact as to proximate cause**

Because respondents have met their burden of production, there is a shift, and appellant is subjected to a burden of production of her own to make a prima facie showing of the existence of a triable issue of material fact as to the element of causation. (*Aguilar, supra*, 25 Cal.4th at pp. 850-851.) As set forth below, we find that appellant has failed to meet this burden.

Appellant states that, in reliance on respondents' negligent representation that there was a 50 percent chance the family court would find her to be Ng's putative spouse and award her $1.5 to $2 million, she declined to accept Ng's settlement offers. Appellant insists that if respondents had advised her that there was less than a 50 percent chance that she would be declared Ng's putative spouse, she would have accepted Ng's settlement offers. In other words, appellant claims, but for respondents' negligence, she would have obtained a greater reward.[7]

Appellant argues that the trial court failed to credit her declaration, which states "In reliance on [respondents'] representation that there was a 50-percent chance that the family court would find me to be Ng's putative spouse and award me $1.5 to $2.0 million, I declined to sign the Attachment to Judgment (Family Law) that Ng signed on May 28, 2010, that provided for a payment of $605,000 to me." Appellant argues that it is axiomatic that a trial court may not weigh the evidence on summary judgment, thus it was improper for the trial court to reject this evidence in her declaration.

Appellant's insistence that she relied on respondents' representation that she had a 50 percent chance of winning is insufficient to create a triable issue of fact as to legal causation. "[A]n issue of fact is not raised by 'cryptic, broadly phrased, and conclusory assertions.' [Citation.]" (*Sinai Memorial Chapel v. Dudler* (1991) 231 Cal.App.3d 190,

---

[7] Appellant's reliance on *Charnay v. Cobert* (2006) 145 Cal.App.4th 170 regarding the concept of but-for causation is misplaced. *Charnay* addresses the sufficiency of legal malpractice allegations on demurrer. Here, the question is whether appellant can establish causation as a matter of law on the undisputed facts of this case.

10

196.) A 50 percent chance is just that: you might win, you might lose. Respondents did not encourage appellant to gamble on this 50/50 chance. On the contrary, the undisputed facts show that respondents strongly encouraged appellant to accept Ng's settlement offer. Appellant does not deny that respondents encouraged her to accept the settlement. The undisputed evidence shows that she simply ignored this advice. Appellant was not relying on her attorneys' advice in rejecting the settlement, as her attorneys' advice was to accept the settlement. Appellant's conclusory assertion to the contrary does not create a triable issue of fact.[8]

Appellant also disputes respondents' position that her replacement of respondents with new counsel broke the chain of causation, based on language in *Cline v. Watkins* (1977) 66 Cal.App.3d 174 (*Cline*). *Cline* was a legal malpractice case which stemmed from a divorce proceeding. Watkins, Cline's former attorney, filed a divorce action on January 21, 1969, claiming several items as community property. Cline's former husband stated that he was receiving $376.15 per month in "Air Force retirement pay." However, Cline's community interest in the retirement pay was not asserted in the dissolution action. (*Id.* at p. 177.)

On May 13, 1969, a substitution of attorney was filed relieving Watkins of representation of Cline. A week later, an attorney named Scott was substituted as counsel. (*Cline, supra*, 66 Cal.App.3d at p. 177.) When Cline filed a malpractice action against both attorneys for their failure to assert her community property interest in the retirement money, Watkins demurred on the ground that there was no causal connection

---

[8] Appellant cites law suggesting that it is improper for a court to resolve issues of credibility on summary judgment. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1065 ["A court generally cannot resolve questions about a declarant's credibility in a summary judgment proceeding"].) In determining that appellant's declaration does not create a triable issue of material fact, we need not make any credibility determinations nor weigh any evidence. Instead, we are making a judgment regarding legal proximate causation based on undisputed evidence. Appellant's alleged reliance on a single statement that gave her only a 50 percent chance of winning was not the legal cause of her failure to obtain a settlement. The legal cause of her failure to obtain a settlement was her own decision to reject two separate attorneys' recommendations that she accept the settlement.

11

between his negligence and Cline's damage because he was relieved before judgment was entered and subsequent counsel could have cured the error.

The trial court sustained Watkins' demurrer, but the Court of Appeal reversed. The question addressed was "whether the negligence of Scott disclosed by the file in the dissolution action to have occurred after that of Watson is a superseding cause which as a matter of law excuses the latter from liability. [Citation.]" (*Cline, supra*, 66 Cal.App.3d at p. 178.) Thus, both attorneys were alleged to have committed the same negligence: failing to secure Cline's community property interest in her former husband's retirement fund. The question was whether the second attorney's negligence superseded Watkins' negligence. Finding the question to be one of foreseeability, the Court of Appeal determined that a factual issue existed.

Appellant has not raised an issue here regarding superseding negligence. She specifically asserts that it was respondents who put her chances of winning at 50/50; appellant's subsequent counsel put her chances "far lower." Nor do respondents argue that the negligence of Stolar was a superseding cause of appellant's damage. Instead, respondents argue that Stolar, operating independently and within the standard of care, advised appellant that her chances of winning the putative spouse issue were not good and encouraged her to take Ng's settlement. In other words, subsequent counsel *did* attempt to prevent any harm that may have been caused by respondents' alleged overestimation of success on the putative spouse issue. Appellant chose to ignore this good advice. It was that choice which was the proximate cause of her damage. Because we are not addressing an issue of superseding negligence, *Cline*, and the lengthy foreseeability discussion therein, are inapplicable.[9]

---

[9]     The Restatement Second of Torts section 452, discussed in *Cline*, is captioned "Third Person's Failure to Prevent Harm." (Rest.2d Torts, § 452.) The restatement is plainly inapplicable to the facts before us. It covers a situation in which "after the original actor has been negligent and so has created an unreasonable risk of harm to another, a third person has the opportunity, by taking affirmative action, to avert the threatened harm. This implies that if such action were taken, it would prevent the negligence of the original actor from causing the harm which has in fact resulted."

In sum, appellant has failed to show the existence of a triable issue of material fact as to causation under the undisputed facts of this case.

## V.  Statute of limitations issue

Respondents have raised a second ground for summary judgment.  They argue that the malpractice action against them is barred by the one-year statute of limitations found in Code of Civil Procedure section 340.6.  The parties raise various conflicting arguments about when exactly appellant's cause of action accrued.

Because we have determined that appellant cannot show the existence of a triable issue of material fact regarding the element of proximate cause, we decline to address the statute of limitations issue.  (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845, fn. 5 ["appellate courts will not address issues whose resolution is unnecessary to disposition of the appeal"].)

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs of appeal.


_____, J.
                                                                CHAVEZ

We concur:


_____, P. J.
BOREN


_____, J.*
FERNS

_____

(Rest.2d Torts, § 452, Com. a.)  Again, neither party here is suggesting that Stolar failed to prevent appellant's harm.  The undisputed facts show that Stolar -- like respondents -- made every effort to prevent harm to appellant by encouraging her to take the settlement.

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LILAS MOUA, | B251787 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC471183) |
| v. | |
| PITTULLO, HOWINGTON, BARKER, ABERNATHY, LLP et al., | ORDER FOR PUBLICATION |
| Defendants and Respondents. | |

THE COURT:*

The opinion in the above entitled matter filed on June 24, 2014, was not certified for publication.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

*BOREN, P. J., CHAVEZ, J., FERNS, J.†

†    Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14