Lillie Birchfield, Plaintiff-Appellee, v. Wabash-Monroe Garage & Parking Corporation, a Corporation, Defendant-Appellant.

Gen. No. 52,871.

First District, Third Division.

July 22, 1969.

Hinshaw, Culbertson, Moelmann & Hoban, of Chicago (D. Kendall Griffith, Dennis J. Hoban, and Thomas M. Chisham, of counsel), for appellant.

John C. Mullen, of Chicago, for appellee.

MR. PRESIDING JUSTICE SULLIVAN delivered the opinion of the court.

This action was brought to recover damages occasioned by the alleged negligence of the defendant in the maintenance of its premises. At the close of the evidence, the trial court directed a verdict in favor of the plaintiff on the issue of the defendant's liability and submitted the cause to the jury on the sole issue of damages. The

jury returned a verdict of $12,500 and the trial court refused to allow the plaintiff to amend her complaint to increase the $10,000 ad damnum. The trial court ordered a remittitur of $2,500 and entered judgment on the verdict as reduced to $10,000.

The defendant appeals from this judgment and contends that: (1) the trial court erred in directing a verdict in favor of the plaintiff on the issue of liability and in denying defendant's motion for a new trial; (2) the trial court erred in not directing a verdict in favor of the defendant; (3) it was error for the trial judge to refuse to allow the defendant to show that the plaintiff had sustained subsequent injury to her right knee; (4) the plaintiff's attorney made improper and prejudicial comments during his closing argument; and (5) the verdict was excessive. The plaintiff cross-appeals from the trial court's denial of her motions to amend and increase the ad damnum to over $10,000.

The plaintiff testified that on June 22, 1961, her daughter-in-law drove her to downtown Chicago to visit Dr. Miller who had been treating the plaintiff for an injury to her right knee which had occurred in 1960 when the plaintiff was employed as a machine operator at the Central Tag Company. The plaintiff was walking with the aid of two crutches. At this visit her doctor discharged her from his care. After her visit to Dr. Miller, she returned to the defendant's garage in which the car was parked. The plaintiff's daughter-in-law went to the rear of the garage to pay the cashier and to get the car from a garage attendant. The plaintiff did not accompany her daughter-in-law but rather walked into the front of the garage and proceeded to her left to the north side of the garage where there were some pillars. She intended to rest her back on one of the pillars since she was fatigued from walking on two crutches. As she approached the pillar, she turned around so that the pillar was to her back and began walking backwards with the

180

aid of the crutches toward the pillar. As she was backing up, her left heel went down into a hole in the garage floor causing her left foot to double back. The plaintiff testified that she did not see the hole prior to the accident. She further testified that she knew neither the location of the hole relative to the pillar nor how many backward steps she had taken prior to stepping into the hole. She did not know the size of the hole. After the occurrence, her daughter-in-law drove the plaintiff to her home.

Florence Birchfield, the plaintiff's daughter-in-law, testified that she also did not see the hole until after the accident. She could not state whether the hole was open or how deep it was. She did state that the hole was six to seven inches in diameter, and she placed the hole to the south of the pillar.

Robert Buck, an investigator, testified on behalf of the plaintiff that within one or two months after the accident he visited the garage where he discovered an open hole of about five inches in diameter to the west of the pillar. Photographs of this hole were taken and one photograph portrayed a hole which was fully open through the floor. These photographs were admitted into evidence over the defendant's objection.

The plaintiff offered medical testimony to the effect that her left foot and ankle had become permanently swollen and thickened and had become painful and difficult to move. There was medical testimony that this condition was permanent. The plaintiff herself testified that as a result of the accident her left foot continued to be stiff, swollen and painful and that she has used crutches from the time of the accident to the time of trial and has not been employed since the accident.

Warner Riley, the General Manager of the defendant, testified that in September of 1961 he initially learned of the plaintiff's accident. In July of 1962 he had occasion to examine the area in question but found no holes at that

time, but he did discover a patch on the floor to the east of the pillar. He did not know when the floor had been patched or what the area had looked like before it was patched.

██ The defendant initially contends that the court erred in directing a verdict against it on the issue of liability since the question of its negligence and of the plaintiff's contributory negligence were proper matters for the jury's determination and therefore should not have been resolved against it as a matter of law. A directed verdict is proper if all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand. (Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504; Roth v. Nauman, 90 Ill App2d 44, 234 NE2d 336.) In Ney v. Yellow Cab Co., 2 Ill2d 74, 84, 117 NE2d 74 the Supreme Court stated:

> "Questions of negligence, due care and proximate cause are ordinarily questions of fact for a jury to decide. . . . Questions which are composed of such qualities sufficient to cause reasonable men to arrive at different results should never be determined as matters of law. The debatable quality of issues such as negligence and proximate cause, the fact that fair-minded men might reach different conclusions, emphasize the appropriateness and necessity of leaving such questions to a fact-finding body. The jury is the tribunal under our legal system to decide that type of issue. To withdraw such questions from the jury is to usurp its function. Bailey v. Central Vermont Railway Co. 319 US 350."

██ It appears to us that the jury in the case at bar should have been permitted to evaluate the degree of care exercised by the plaintiff who, on crutches, walked into an area of a public garage and turned her back on the

defect which caused her fall. The question of whether the plaintiff was guilty of contributory negligence was a factual question and should not have been decided as a matter of law. See: Swenson v. City of Rockford, 9 Ill2d 122, 136 NE2d 777; Nugent v. City of Chicago, 110 Ill App2d 167, 249 NE2d 309.

■■ Moreover, the trial court erred in finding the defendant guilty of negligence as a matter of law. The record is conflicting as to the precise character and location of the hole at the time of the accident. The record does not disclose whether the area of the garage where the accident occurred was an area open to patrons of the defendant or foreseeably frequented by such persons. There is no evidence that the defendant had actual knowledge of the hole's presence at the time of the accident. The photographs of the scene which were submitted by the plaintiff were taken at least one month after the occurrence. When one invites another upon his premises, the law imposes a duty upon that person to exercise reasonable care for his visitor's safety and to warn the visitor of any defects which are not readily apparent but which are known to the landowner or could have been known had the landowner used reasonable care to discover these defects. (Blue v. St. Clair Country Club, 7 Ill2d 359, 131 NE2d 31.) We cannot conclude that the plaintiff's testimony and the photographs offered into evidence were such that the defendant's negligence was established as a matter of law. Such a question should have been resolved by the jury.

In view of our conclusion that factual questions of negligence and contributory negligence were presented at trial, we reject the defendant's second contention that the trial court should have directed a verdict in its favor based upon a finding that the defendant was not proved negligent as a matter of law.

■ The trial court refused to allow the defendant to cross-examine the plaintiff concerning a subsequent au-

tomobile accident in April of 1966 in which the plaintiff allegedly sustained injury to her right knee. The defendant was also denied the opportunity to introduce the evidence deposition of Doctor Bona which the defendant asserts would show that as a result of the 1966 accident the plaintiff suffered headaches, dizziness, and aggravated pain in her right knee, the same knee injured by the plaintiff in 1960. The exclusion of this evidence the defendant asserts as error. On direct examination, the plaintiff testified that she had not been without the aid of crutches since the day of the accident in question and had not worked since that day. The apparent basis for the judge's exclusion of the evidence relative to the later automobile accident was that it was irrelevant since the 1966 accident resulted in injury to the plaintiff's right knee whereas the accident in the defendant's garage in 1961 related to the left foot. However the trial court's rulings could have created in the minds of the jury that the plaintiff's use of crutches and her unemployment were solely caused by the 1961 injury to her left foot. We are of the opinion that if the defendant can connect the subsequent injury to the right knee to some of the plaintiff's pain and disability prior to trial, such evidence is competent and relevant to the issue of damages. See: Adkins v. Blue Bird Coach Lines, Inc., 27 Ill App 2d 34, 169 NE2d 368 (Abst).

Since the aforementioned errors necessitate a reversal of the judgment and a remandment of the cause for a new trial, it is unnecessary to discuss the defendant's final two points because it is unlikely that they will occur at the subsequent trial.

██ ██ The plaintiff has filed a cross-appeal wherein she contends that the trial court erred in denying her motions to amend her complaint to increase the ad damnum. The plaintiff moved to amend the ad damnum at the trial's commencement on July 12, 1967 and again moved to amend to conform the pleadings to the proof

and verdict after the jury returned the verdict of $12,500. Both motions were denied and the defendant's motion to reduce the judgment to conform to the ad damnum was granted even though the trial judge specifically stated in his order reducing the judgment that the jury's verdict was not excessive. The amendment provisions of section 46 of the Civil Practice Act (Ill Rev Stats 1967, c 110, par 46) are to be liberally construed to the end that a controversy may be decided upon its facts and its merits and in furtherance of justice. (Cain v. New York Cent. R. Co., 35 Ill App2d 333, 182 NE2d 910; Shockley v. Good, 13 Ill2d 298, 148 NE2d 763.) Under the facts and circumstances at bar, the trial judge abused his discretion in denying the plaintiff the right to amend and enlarge her ad damnum especially when the plaintiff so moved at the beginning of the trial. Therefore, upon remand of this cause for a new trial, the plaintiff should be permitted to amend and increase the ad damnum.

For the foregoing reasons, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded.

SCHWARTZ and DEMPSEY, JJ., concur.