PUBLIC TAXI SERVICE, INC., *et al.*, Plaintiffs-Appellants, *v.* GEORGE F. BARRETT, Defendant-Appellee.

First District (4th Division)   No. 61479

Opinion filed November 17, 1976.—Rehearing denied December 13, 1976.

Sidney Z. Karasik, of Chicago (Michael J. Goldstein, of counsel), for appellants.

Lord, Bissell & Brook and Stansell & Rahn, both of Chicago (Richard E. Mueller, Stephen A. Milwid, and John J. Berwanger, of counsel), for appellee.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

The plaintiffs, several taxicab licensees and associations of taxicab licensees operating in the Chicago area or the northern suburbs of Cook County, brought this action in the Circuit Court of Cook County, Illinois, against George Barrett, the defendant, charging him with negligence and legal malpractice. Following a lengthy jury trial, the defendant moved for a directed verdict at the close of plaintiffs' case. The basis of defendant's motion was that the plaintiffs had failed to produce any competent evidence which would support a verdict in their favor as to any of the allegations contained in plaintiffs' amended complaints. The trial court directed a verdict in defendant's favor. The court found that plaintiffs failed to sustain their burden to prove elements requisite to the cause of action, in that they failed to present evidence sufficient to raise essential questions of fact. The plaintiffs maintain that an overwhelming case of professional malpractice was proved, and appeal the disposition made by the trial court.

The plaintiff taxicab companies were the liability insureds of the Prudence Mutual Casualty Company (hereinafter referred to as Prudence), from 1962 until December 1966, or in some instances until early 1967. The plaintiffs had purchased comprehensive public liability cab insurance from Prudence and were insured against claims and lawsuits brought against plaintiffs from the alleged negligent operation of their taxicabs. While this insurance was in force, a multitude of lawsuits were brought against the plaintiff companies by various claimants for personal injuries and property damage. The defendant, Barrett, was retained by Prudence to represent the litigation interests of its insureds in trial and appellate matters. The "Law Firm of George F. Barrett" defended claims brought against the plaintiffs until September 1969, at which time the defendant returned to Prudence all case files pertaining to its insureds. Prudence became unable to fulfill its contractual obligations to its insureds. The company was placed in rehabilitation by the Illinois Insurance Department in October 1969, and was later placed in liquidation. At the time when Prudence was ordered into liquidation, various lawsuits brought against the plaintiffs were still pending. Subsequently, the plaintiffs filed suit against Barrett requesting $1 million in damages.

The defendant was retained and appeared for plaintiffs as their attorney in numerous lawsuits as a result of the insurance coverage purchased by plaintiffs from Prudence. Thus, according to the plaintiffs, an attorney-client relationship existed between Barrett and the plaintiff companies. Barrett, the plaintiffs argue, as an attorney at law, was a

fiduciary required to observe the highest standards of good faith and fidelity to his clients, and to represent their interests with the appropriate degree of care and diligence. Plaintiffs were led by defendant's actions to believe that he would adequately represent and defend their interest in all pertinent matters. The plaintiffs specifically alleged that the defendant flagrantly violated his fiduciary duty to plaintiffs when he pursued a course of self or conflicting interests, negligently handled the legal defenses available to plaintiffs, and abandoned the plaintiffs and exposed them to great injury, in that he (1) failed to pursue timely and adequate discovery on behalf of plaintiffs, (2) failed to assert as a defense on behalf of plaintiffs the lack of an agency relationship between the companies and their taxicab drivers, (3) failed to protect plaintiffs from being improperly named as party defendants in several lawsuits, (4) while remaining as attorney of record for the plaintiffs in their lawsuits, failed to appear, requiring plaintiffs to hire other counsel to represent them, and (5) abandoned plaintiffs without notice when Prudence was unable to pay his fees.

It was further alleged in count II of the complaints that at the time when Barrett served as attorney for the plaintiffs, he was a director of Prudence and had a financial interest in that company. According to the plaintiffs, Barrett was knowledgeable that Prudence was in a precarious financial condition, and that the need for rehabilitation was imminent. Barrett was also aware of the enormous sums expended by plaintiffs in order to secure the valuable insurance coverage. The plaintiffs assert that defendant was in breach of his fiduciary obligations to the plaintiffs when he failed to disclose to them the alleged conflict of interest affecting their attorney-client relationship, the financial condition of Prudence, and that plaintiffs were in danger of losing their liability coverage. Consequently, plaintiffs continued to pay monthly premiums to Prudence, and were compelled to hire alternative counsel and to pay claims from their own funds when the insurance company became insolvent.

The defendant admitted that at the time in question he did appear for plaintiffs as the attorney of record in various lawsuits, and that he was also a director of Prudence. Barrett stated that he was paid a variable retainer by Prudence. At this time, Barrett was representing the insureds of Prudence, including plaintiffs, in a total of 6000 cases referred to him by the company. It was standard procedure for Barrett to receive new case files from Prudence. The company would forward each summons and complaint involving a named insured, as well as the results of any investigation conducted by Prudence. Each case would then be assigned to one of the 15 to 20 attorneys in Barrett's firm. The attorney would then prepare and file an answer, and proceed to handle the case until a final disposition was made by trial or settlement.

According to Barrett, in 1969 he was not being paid sufficiently by Prudence and was operating at a financial loss. He also stated that problems had developed between him and other Prudence directors. Barrett moved for leave to withdraw from all Prudence cases. He served notice of these motions to withdraw upon Prudence, the insureds, and other interested parties. The motions were denied. The defendant continued to act as attorney for the insureds until September 1969. At that time, according to Barrett, Prudence represented to him that other counsel had been obtained to represent its insureds. Prudence then proceeded to take back all of its case files. Subsequently, Barrett did not go to court on any matters pertaining to the insureds of Prudence. The defendant denied that his conduct was in any way improper, and asserted that he had at all times properly and diligently represented the interests of the plaintiffs.

The issues presented for review are (1) whether the trial court acted appropriately in directing a verdict at the close of plaintiffs' evidence; (2) whether the trial court was within its discretion in limiting examination of the defendant; and (3) whether the trial court was correct in denying plaintiffs' motion for leave to amend their pleadings to include a prayer for punitive damages.

The law in Illinois is well established regarding the standard to be applied by a trial court in determining whether or not to direct a verdict. A trial court may direct a verdict " * * * only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504.) This same standard is to be applied by a reviewing court in determining whether or not a trial court has erroneously directed a verdict. (*Campbell v. Cowden* (1974), 18 Ill. App. 3d 500, 502, 309 N.E.2d 601.) In reviewing the propriety of a verdict directed for a defendant, in order to determine if the evidence so overwhelmingly favored the defendant that no contrary verdict could ever stand, a reviewing court will " * * * look at the evidence as it appears most favorably to the plaintiffs, together with all reasonable inferences construed most strongly in their favor, rejecting all contrary or explanatory circumstances." *Weiner v. Trasatti* (1974), 19 Ill. App. 3d 240, 242, 311 N.E.2d 313.

■■ In our application of the above standards of law to the instant case, we find that the evidence when viewed in its aspect most favorable to plaintiffs, did not so overwhelmingly favor the defendant that no contrary verdict based on that evidence could ever stand. The trial court erred in directing a verdict for the defendant at the close of plaintiffs' case.

■■ The plaintiffs herein had the burden not only to plead and prove that the defendant was negligent, but also that the alleged negligent conduct was the proximate cause of the alleged injury. (*Bonhiver v. Rotenberg* (7th Cir. 1972), 461 F.2d 925, 927.) It has been established that:

> "What is the proximate cause of an injury is ordinarily a question of fact, to be determined by the jury from a consideration of all of the evidence and attending circumstances,—it can arise as a question of law only when the facts are not only undisputed but are also such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from the facts [citation]."

(*Casey v. Burns* (1955), 7 Ill. App. 2d 316, 326, 129 N.E.2d 440.) We believe that the plaintiffs presented evidence sufficient to raise a factual question as to whether the defendant was negligent, and whether his negligence was the proximate cause of the injury sustained by the plaintiffs. The jury should have been allowed to properly resolve these questions. Had the evidence presented at the close of plaintiffs' case been submitted to the jury, a verdict in favor of plaintiffs may reasonably have been returned.

The defendant argues that plaintiffs failed to prove that they sustained a monetary loss as a proximate result of any conduct engaged in by the defendant. The defendant maintains that the defenses available to the plaintiffs in the various lawsuits, that defendant allegedly was negligent in failing to raise, were in fact not legally valid defenses; that plaintiffs were not prejudiced by his failure to raise these defenses since asserting them would not have affected the outcome of the various lawsuits. Defendant cites *Kohler v. Wollen* (1973), 15 Ill. App. 3d 455, 458, 304 N.E.2d 677, as requiring that plaintiffs prove that but for the alleged malpractice or negligence of the defendant, the judgments or settlements would not have gone against them. Defendant contends that the plaintiffs entirely failed to meet this burden of proof. However, John Wilson, an attorney specializing in personal injury work for insurance companies, testified as an expert witness for plaintiffs. According to Mr. Wilson, it is not good practice for an attorney representing a taxicab company to make routine admissions of the agency of drivers where, as in the instant case, the attorney is aware that lease agreements existed between the companies and their drivers which provided for the independent contractor status of the drivers. And, further, that an attorney could not be certain without investigation, that an agency relationship actually existed. Irwin Tischer, an attorney subsequently retained by the plaintiffs, testified that wherever possible he moved to amend the original answer filed by Barrett in behalf of the plaintiffs to deny agency. He stated that the defense was helpful in making settlements favorable to the plaintiffs in those cases where amendment was allowed. In view of this testimony, the jury might

reasonably have found that the plaintiffs were prejudiced when they later attempted to negotiate settlements of the various lawsuits, as a result of defendant's failure to raise certain defenses even if those defenses were not legally valid.

The defendant contends that plaintiffs failed to establish that they were in any way damaged by his alleged abandonment of their cases, since plaintiffs were able to vacate the majority of the default judgments entered against them, and obtained favorable settlements in a number of the cases. According to the defendant, any damage suffered by the plaintiffs resulted from the insolvency of Prudence rather than any negligence on his part.

The record reveals that Barrett returned all of his case files to Prudence in September 1969. He never notified the plaintiffs that he no longer intended to represent their interests in the lawsuits then pending against them. The defendant remained the attorney of record in the cases, although he had ceased to represent the plaintiffs. The plaintiffs did not become aware of the defendant's withdrawal until March 1970 when they were advised by the Illinois Department of Insurance to obtain new counsel. The new counsel retained by plaintiffs attempted to contact the defendant regarding the pending lawsuits and to gain possession of the case files pertaining to the suits. The defendant failed to respond to these requests and the case files could not be located. Thus, plaintiffs' attorneys were unaware exactly which cases were pending against the plaintiffs, as well as where and when those cases would be tried. Numerous default judgments were entered against the plaintiffs, several of which their attorneys were unable to vacate. The missing case files were finally located at the Illinois Department of Insurance in the spring of 1970; the files did not become totally available to plaintiffs' attorneys until February 1971. Plaintiffs alleged that they incurred tremendous and excessive legal expenses as a result of Barrett's conduct, since their new attorneys were forced to spend many hours searching for files, sorting files, and in general attempting to remedy the damage done by Barrett. Expert testimony was presented at trial to the effect that the defendant was not acting in accord with his professional responsibilities when he ceased to represent the plaintiffs without giving them proper notice. In view of this evidence, a jury might reasonably have found that defendant was guilty of malpractice and negligence, and that plaintiffs were injured as a result of his conduct.

■■ The plaintiffs next argue that the trial court erred in limiting their scope of examination of the defendant. We disagree.

The scope and extent of cross-examination rests primarily within the discretion of the trial judge. (*People v. Moretti* (1955), 6 Ill. 2d 494, 129 N.E.2d 709.) Only an abuse of such discretion which results in prejudice

to the complaining party will justify reversal by a reviewing court. (*Chamness v. Dawson* (1963), 44 Ill. App. 2d 176, 177, 194 N.E.2d 538.) We do not believe that the trial court abused its discretion where it limited plaintiffs' cross-examination of the defendant regarding his connection with the Prudence Mutual Agency Company. Barrett was called by plaintiffs to testify as an adverse witness pursuant to section 60 (Ill. Rev. Stat. 1973, ch. 110, par. 60). Defendant was cross-examined and the elicited testimony established that the agency had been formed to secure business for Prudence; that the defendant had participated in the founding of the agency; and that a written agency agreement gave the defendant the right to inspect the books and records of Prudence. However, objections to further questions regarding details of the operation of the agency were sustained on grounds of relevancy. The trial court was entirely within its discretion in finding that the probative value of such testimony would be outweighed by its prejudicial effect.

■■ Finally, the plaintiffs contend that the trial court abused its discretion in refusing plaintiffs leave prior to the commencement of trial to amend their complaints to include a prayer for punitive damages. We agree. *Birchfield v. Wabash-Monroe Garage & Parking Corp.* (1969), 113 Ill. App. 2d 178, 252 N.E.2d 89; *Baker v. State of Illinois Department of Labor* (1969), 105 Ill. App. 2d 316, 245 N.E.2d 65 (abstract opinion).

Where the defendant is aware from the nature of the complaint that plaintiffs intended to prove willful misconduct, an amendment of the complaint to include a prayer for punitive damages should be allowed since defendant would not be prejudiced thereby. (*First National Bank v. Amco Engineering Co.* (1975), 32 Ill. App. 3d 451, 455, 335 N.E.2d 591.) We find that no prejudice or unfairness would result to the defendant in the instant case if plaintiffs were permitted to amend their complaints to include a prayer for punitive damages.

In accordance with the above findings, the verdict directed in defendant's favor and the denial of leave to amend the complaints are reversed and the cause remanded for a new trial.

Reversed and remanded.

DIERINGER and ADESKO, JJ., concur.