FIRST DIVISION

December 12, 2005

Nos. 1-04-1805 & 1-04-3220 cons.

JOSE LOPEZ, Individually and as Special Administrator
 ) Appeal from the

of the Estate of Elizabeth Lopez, Deceased, ) Circuit Court of

) Cook County.

Plaintiff-Appellant, )    

)    

v. )   No. 03 L 009991    

) 

CLIFFORD LAW OFFICES, P.C., )

THOMAS K. PRINDABLE and )

WILLIAM KING, ) 
 

) 

Defendants-Appellees 
 ) 

)

(Joe Loran and )

Kinnally, Krentz, Loran, Hodge & Herman, P.C., )

formerly known as Murphy, Hupp & Kinnally, P.C., ) Honorable

) Kathy M. Flanagan,

Respondents-in-Discovery). ) Judge Presiding.

JUSTICE GORDON delivered the opinion of the court:

This is an appeal from a dismissal of a legal malpractice action.  After Elizabeth Lopez, the daughter of plaintiff Jose Lopez, drowned in a pool that was allegedly maintained by the Rockford School District, Lopez retained defendant Clifford Law Offices (the Clifford firm) to represent him and Elizabeth's estate in a wrongful death action.  Several months later, defendant Thomas K. Prindable, an attorney with the Clifford firm, wrote to Lopez, informing him that the firm was unable to continue representing him and the estate.  Prindable's letter incorrectly advised Lopez that the applicable statute of limitations was two years, when, in fact, it was only one year from the date of Elizabeth's death.  Ultimately, another attorney—whom Lopez retained after the expiration of the one-year statute of limitations applicable to municipalities, but before the second anniversary of Elizabeth's death—filed the wrongful death action.  However, because the wrongful death action was filed after the expiration of the applicable statute of limitations, it was dismissed.

The Clifford firm and Prindable (collectively, the Clifford defendants), as well as defendant William King, an attorney who referred Lopez to the Clifford firm, separately moved to dismiss the malpractice action pursuant to section 2-619(a)(9) of the 
Code of Civil Procedure (735 ILCS 5/2-619
(a)(9)
 (West 2002)) on the grounds that the wrongful death action was still viable when the Clifford firm ceased to represent the estate.  The circuit court granted the motions to dismiss.
  
For the reasons that follow,
 we reverse and remand.

BACKGROUND

Lopez initially filed his malpractice action against the Clifford defendants alone.  In his August 19, 2003, complaint, Lopez alleged the following.  Elizabeth died on February 20, 2001.  Shortly thereafter, Lopez retained the Clifford firm "for the purpose of advising [him] of his legal rights."
(footnote: 1)  At all pertinent times, Prindable was an employee, servant and/or agent of the Clifford firm and acting within the scope of his agency.  On August 20, 2001, Prindable wrote to Lopez a letter which stated, in pertinent part:

"I am writing *** to confirm our telephone conversation in August 14, 2001, wherein I informed you that Clifford Law Offices is unable to continue to assume professional responsibility on behalf of the Estate of your daughter, Elizabeth, as a result of her tragic death on February 20, 2001.  This decision does not represent an opinion as to the merit of any cause of action the Estate may have.

Please be advised that the statute of limitations in Illinois provides that a civil action to recover compensation for your daughter's injuries must be filed within two years after the cause of action occurred.  Therefore, should you decide to pursue this matter further, we respectfully suggest that you contact an attorney of your choice immediately so that the Estate's legal rights may be fully protected.  Do not delay."

The letter was attached as an exhibit to the malpractice complaint
.  Lopez alleged that Prindable's advice as to the statute of limitations, upon which he reasonably relied, was incorrect because the Rockford School District was a "local public entity
" within the meaning of the Local Governmental and Governmental Employees 
Tort Immunity Act 
(hereinafter, the Tort Immunity Act)
 
(see 745 ILCS 10/1-206 (West 2000))
 
and no civil action may be commenced against a "local public entity" after one year from the date of the injury (see 
745 ILCS 10/8-101 (West 2000))
.  Lopez claimed that as a result of the Clifford defendants' negligence, he and the estate irrevocably lost their rights of action, and had the wrongful death action not been aborted because of the statute of limitations defense, it would have succeeded on the merits.  Although Lopez subsequently amended his complaint several times, these allegations remained unchanged throughout.

The record shows that in September of 2001, shortly after the Clifford defendants terminated their attorney-client relationship with Lopez but before the one-year statute of limitations would have expired, Lopez consulted with another attorney, Joseph Loran, about representing him and the estate in the wrongful death action.  By a letter dated October 5, 2001, Loran declined to take the case.  On 
March 22, 2002, a month after the one-year period of limitations expired, but almost a full year before a two-year period of limitations would have run, Lopez consulted yet another attorney regarding the wrongful death matter.  That attorney informed Lopez that his previous attorney may have committed malpractice in letting the statute of limitations expire.
  The record indicates that Lopez did not consult any attorneys in the period between October 5, 2001, and March 22, 2002.

In their section 2-619(a)(9) motion to dismiss,
(footnote: 2) the Clifford defendants urged that the malpractice action against them could not stand because they terminated their attorney-client relationship with Lopez within the one-year limitations period when the wrongful death action was still viable and, furthermore, Loran's "intervention" within that one-year period extinguished any duty the Clifford defendants owed to Lopez.  In support, among other things, the Clifford defendants attached Loran's October 5, 2001, letter to Lopez, wherein Loran stated, in pertinent part:

"I have come to the conclusion that I do not believe I can accept representation of your daughter's claim.  Other attorney's [
sic
] may feel differently and I encourage you to contact other lawyers.

Please be advised that all lawsuits are limited by a period prescribed by statute.  You need to have your daughter's case filed within the applicable limitations period.  If you do not do so, you may lose whatever rights you have to recovery."

On February 17, 2004, Lopez filed an amended complaint, adding King as a respondent in discovery, and on March 10, 2004, Lopez filed a second amended complaint, adding Loran and Loran's firm as respondents in discovery.

To assist in formulating his response,
 Lopez moved to take a discovery deposition of Loran to determine whether an attorney-client relationship was ever undertaken by him.  In the deposition, the transcript of which was attached as an exhibit to Lopez's response to the motion to dismiss, Loran testified that he had met with Lopez on one occasion in September of 2001.  During that meeting, Loran was trying to obtain an understanding of the facts surrounding Elizabeth's death and did not discuss legal issues.  At the end of the meeting, Loran told Lopez that he would contact Prindable in order to determine whether to undertake the representation of the Lopez family.  After discussing the matter with Prindable, Loran decided not to take the Lopez case.  According to Loran, he never entered into a retainer agreement with Lopez and did not ask for or obtain Elizabeth's medical records or a coroner's report.  Nor did Loran open a file or assign a case number to the Lopez matter.  After sending the October 5, 2001, letter, Loran had no further contact with Lopez.

Loran's account was corroborated by Lopez's affidavit, which was also attached as an exhibit to the response to the motion to dismiss.  In his affidavit, Lopez stated that Loran never said he would accept the matter and did not discuss the statute of limitations.  Lopez additionally stated that had he known that the statute of limitations was one year, rather than two, he would have sought another attorney immediately after being turned down by Loran.

Consequently, in his response to the Clifford defendants' motion to dismiss, Lopez argued that the motion should be denied because Loran was never retained as an attorney in the wrongful death matter and, therefore, had no duty to correct the Clifford defendants' incorrect advice.  Lopez additionally asserted that Loran did not voluntarily undertake a duty to provide him legal advice and did not offer advice regarding the statute of limitations.  Lopez therefore argued that Loran's actions did not break the causal chain between the Clifford defendants' negligence and the ultimate barring of the cause of action by the expiration of the statute of limitations.  In the alternative, even if Loran could be regarded as a tortfeasor, Lopez argued that the Clifford defendants and Loran would be joint tortfeasors, which would preclude dismissal.

The circuit court, however, agreed with the Clifford defendants that the legal malpractice claim against them could not stand because the wrongful death action was still viable when the attorney-client relationship between them and Lopez came to an end.  On April 12, 2004, the court granted the Clifford defendants' motion to dismiss.

Shortly thereafter, on April 20, 2004, Lopez moved for leave to amend his second amended complaint.  Lopez sought to convert King from a respondent-in-discovery to a defendant.  The circuit court granted that motion, and on May 4, 2004, Lopez filed his third amended complaint, which added a count against King, wherein Lopez alleged that King was the attorney who initially referred him to the Clifford firm and that King had "agreed to assume the same legal responsibility for the performance of the legal services as the [Clifford firm]."  It appears from the record that although the circuit court allowed Lopez to file the third amended complaint, the court reaffirmed its earlier dismissal of the count against the Clifford defendants.

On April 27, 2004
, while the motion to amend was pending, Lopez filed a motion to reconsider and vacate the circuit court's ruling granting the Clifford defendants' motion to dismiss.  Lopez urged that the circuit court's ruling was problematic because it placed the burden of uncovering and remedying bad legal advice onto the client untrained in the practice of law.  

On June 2, 2004, the circuit court denied Lopez's motion to reconsider and made a Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)) finding that there was no just reason for delay of enforcement or appeal of its decision dismissing 
the Clifford defendants with prejudice
.  On June 23, 2004, Lopez timely filed a notice of appeal as to the Clifford defendants.

On July 29, 2004, King moved, pursuant to section 2-619(a)(9), to dismiss the count against him, asserting the same grounds as the Clifford defendants.  On October 6, 2004, the circuit court granted King's motion, with prejudice.  On October 19, 2004, Lopez timely filed a notice of appeal as to King.  We granted Lopez's motion to consolidate the two appeals.

ANALYSIS

On appeal, Lopez admits that his relationship with the Clifford firm was terminated when there were still six months left on the limitations period and that he subsequently consulted with Loran, who declined to take his case on October 5, 2001.  Lopez, however, contends that none of these facts are proper grounds for dismissal since he reasonably relied on the advice in Prindable's letter that the applicable statute of limitations was two years, and therefore Prindable's advice was the proximate cause of his and the estate's legal injuries.  In response, the Clifford defendants
(footnote: 3) argue that dismissal was proper for the following alternative reasons: (1) they withdrew when the action was still viable; (2) they should be absolved of liability because of Lopez's intervening consultation with Loran; and (3) Lopez did not reasonably rely on Prindable's statute of limitations advice.

Because this matter comes to us on a section 2-619 dismissal, our review is 
de novo
.  
Kedzie & 103rd Currency Exchange, Inc. v. Hodge
, 156 Ill. 2d 112, 116, 619 N.E.2d 732, 735 (1993)
.
  
A claim may be dismissed pursuant to section 2-619(a)(9) if it "
is barred by other affirmative matter avoiding the legal effect of or defeating [it].
"  735 ILCS 5/2-619(a)(9) (West 2002).
  
In ruling on a section 2-619 motion to dismiss, the circuit court may consider external submissions of the parties, including depositions and affidavits.  
Zedella v. Gibson
, 165 Ill. 2d 181, 185, 650 N.E.2d 1000, 1002 (1995).  
If a claim was thus dismissed, 

"[t]he question on appeal is 'whether the existence of a genuine issue of material fact should have precluded the dismissal or, absent such an issue of fact, whether dismissal is proper as a matter of law.' "  
Zedella
, 165 Ill. 2d at 185-86, quoting 
Hodge
, 156 Ill. 2d at 116-17
.  

Upon review, all well-pleaded facts, as well as reasonable inferences to be drawn from those facts, are taken as true.  
Keef v. Widuch
, 321 Ill. App. 3d 571, 576, 747 N.E.2d 992, 997 (2001). 

It is well established that the elements of a legal malpractice action in Illinois are: (1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney; (2) a negligent act or omission constituting a breach of that duty; (3) proximate cause; and (4) damages.  
Paulsen v. Cochran
, 356 Ill. App. 3d 354, 358, 826 N.E.2d 526, 530 (2005); 
Cedeno v. Gumbiner
, 347 Ill. App. 3d 169, 174, 806 N.E.2d 1188, 1192 (2004); 
Mitchell v. Schain, Fursel & Burney, Ltd.
, 332 Ill. App. 3d 618, 620, 773 N.E.2d 1192, 1193-94 (2002); 
Goran v. Glieberman
, 276 Ill. App. 3d 590, 593, 659 N.E.2d 56, 58 (1995); 
Majumdar v. Lurie
, 274 Ill. App. 3d 267, 270, 653 N.E.2d 915, 918 (1995); 
Skorek v. Przybylo
, 256 Ill. App. 3d 288, 290, 628 N.E.2d 738, 739-40 (1993)
.  In a legal malpractice action, ordinary negligence principles apply.  See 
Pelham v. Griesheimer
, 92 Ill. 2d 13, 440 N.E.2d 96 (1982) (applying traditional negligence principles in a legal malpractice action); 7A C.J.S. 
Attorney & Client
 §301, at 334 (2004) (a legal malpractice action is similar to any other negligence claim, and the standard of care inquiry is whether the lawyer failed to exercise reasonable care and skill in handling the client's matter—a classical tort negligence standard)
.
 

It is axiomatic, as one court aptly put it, that the duty of an attorney encompasses protecting a client "from self-inflicted harm." 
 
Conklin v. Hannoch Weisman
, 145 N.J. 395, 412, 678 A.2d 1060, 1068 (1996)
. 
 
The court in 
Conklin
 recognized that "[m]alpractice in furnishing legal advice is a function of the specific situation and the known predilections of the client," and the standard of care "must be *** tailored to the needs and sophistication of the client."  
Conklin
, 145 N.J. at 413, 678 A.2d at 1069.  
The jurisdictions which considered attorney liability for incorrect legal advice, albeit not in the context of withdrawal,
 generally look to whether the attorney was negligent in giving legal advice (elements of duty and breach) and whether the plaintiff relied to his detriment on the advice (elements of causation and damages).  See 
Conklin
, 145 N.J. at 420, 678 A.2d at 1072; 
Ramp v. St. Paul Fire & Marine Insurance Co.
, 263 La. 774, 269 So.2d 239 (1972); 7A C.J.S. 
Attorney & Client
 §309, at 343 (2004). 
 

In the instant case, the Clifford defendants gave Lopez incorrect legal advice with respect to how much time he had left to file the wrongful death action.  It is 
prima facie
 negligent conduct for an attorney to misadvise a client on such a settled point of law that can be looked up by the means of ordinary research techniques.  See 7A C.J.S. 
Attorney & Client
 §308, at 342 (2004). 
 In this context, we observe that such incorrect advice would undermine the client's sense of urgency to seek replacement counsel and is likely to have much more dire consequences than no advice at all.  It seems to be a matter of common sense that a person who was not lulled into a false sense that he had another year and a half to file his action would aggressively seek replacement counsel soon after being discharged as a client.

The Clifford defendants, however, maintain, as they did below, that their alleged negligence would be of no consequence because Lopez's wrongful death action was still viable at the time of the withdrawal.  In support of this "viability" theory, they rely on a number of cases, all 
of which upheld summary disposition of a legal malpractice action.
  

The Clifford defendants principally rely on 
Land v. Greenwood
, 133 Ill. App. 3d 537, 478 N.E.2d 1203 
(1985).  In 
Land
, the original attorney was discharged by the plaintiff some six months after filing 
the underlying action
.  At the time of the discharge, the original attorney had not yet served process on most of the defendants.  By the time the successor attorney accomplished the service of process on all defendants, it had been a year since the action was filed.  Upon the motions of the defendants, the circuit court dismissed the underlying action with prejudice, pursuant to Supreme Court Rule 103(b) (87 Ill. R. 103(b))
, for lack of diligence in effecting the service
 of process.  The circuit court's order, however, did not reference the original attorney's conduct.  The plaintiff then brought a malpractice action against the original attorney. 
 
Land
, 133 Ill. App. 3d at 538-40.  
In upholding the dismissal of the malpractice action, this court—while leaving the question of the original attorney's negligence (in putting the case at risk for dismissal) open-ended—nevertheless held that the original attorney could not be held liable
.  
Land
, 133 Ill. App. 3d at 540.  
This court focused on the fact that the successor attorney became involved in the case when it was still viable, 
i.e.
, when it was still possible to avert involuntary dismissal pursuant to a Rule 103(b) motion by taking a voluntary nonsuit 
and refiling the action within a year.
(footnote: 4)  
Under such circumstances, this court continued, 
regardless of the possible negligence of the original attorney 
"[the] successor counsel had the duty to preserve his client's cause of action.  It was viable when he received it; it was not when he got through with it."  
Land
, 133 Ill. App. 3d at 540.  

The Clifford defendants additionally rely on two cases that followed 
Land
 and reached the same result—
Mitchell
 and 
Cedeno
.  In 
Mitchell
, the plaintiff's original attorney failed to prosecute the underlying action, resulting in a dismissal for want of prosecution (DWP).  
Some five months later, the plaintiff—who was unaware of the 
DWP—discharged the original attorney and retained another attorney to prosecute the matter.  
At that point, the action was still viable—pursuant to the Code of Civil Procedure (the Code), the successor attorney had almost two years within which to reinstate the action.  
The successor attorney, however, failed to do so within the period provided by the Code.  
The plaintiff eventually filed a malpractice action against both attorneys.  
Mitchell
, 332 Ill. App. 3d at 619-22.  This court affirmed the grant of summary judgment in favor of the original attorney, explaining:

"There is no question that plaintiff's cause of action was viable, as a matter of law, well after defendants were discharged and successor counsel was retained.  It therefore follows that defendants' alleged negligence did not cause plaintiff's damages, the loss of a viable cause of action."  
Mitchell
, 332 Ill. App. 3d at 622.  

This line of reasoning was also utilized in 
Cedeno
.  There, the plaintiff sought to commence a personal injury action against the Chicago Transit Authority (the CTA).  
The plaintiff's original attorney timely served the CTA with a statutorily required notice of a claim for personal injuries.  
The notice, however, incorrectly listed the date on which the plaintiff's injury occurred (it was off by one day).  
Some four months later, the plaintiff discharged the original attorney and retained a successor attorney to prosecute her personal injury action.  
Ultimately, the circuit court granted summary judgment in the personal injury action in favor of the CTA because the notice was defective. 
 
The plaintiff then sued the original attorney for malpractice.
(footnote: 5)  
Cedeno
, 
347 Ill. App. 3d at 170-71
.  
Upon review, this court found that, as a matter of law, the plaintiff's personal injury action remained actionable despite the defective initial notice and, therefore, the circuit court erred in granting summary judgment in favor of the CTA.  
Cedeno
, 
347 Ill. App. 3d at 176
.  
Consequently, this court held that the original attorney's negligence was not the proximate cause of the plaintiff's legal injury:

"[D]efendants cannot be held accountable for the court's acceptance of a legally unsound basis for granting summary judgment against plaintiff.  Where her claim remained actionable after defendants' discharge, and the circuit court's misapplication of the law served as an intervening cause, it cannot be said that plaintiff's damages proximately resulted from defendants' [negligent conduct]."  
Cedeno
, 
347 Ill. App. 3d at 176
, citing 
Mitchell
, 332 Ill. App. 3d at 620, and 
Land
, 133 Ill. App. 3d at 540.

In further support of their position, t
he Clifford defendants cite to 
McGee v. Danz
, 261 Ill. App. 3d 232, 237, 633 N.E.2d 234, 237 (1994), and 
Harvey v. Mackay
, 109 Ill. App. 3d 582, 587, 440 N.E.2d 1022, 1026 (1982).  In 
McGee
, the original attorney was discharged, and in 
Harvey
 the original attorney withdrew—when the underlying actions were still viable, 
i.e.
, before the running of the statute of limitations.  The plaintiff in each case, however, alleged that the original attorney was negligent in failing to file the action before his withdrawal.  
McGee
, 261 Ill. App. 3d at 233; 
Harvey
, 109 Ill. App. 3d at 587.
  In 
McGee
, this court affirmed summary adjudication of the matter in favor of the original attorney, stating:

"Because no genuine issue of fact exists that plaintiff discharged defendant prior to the running of the four-year statute of limitations ***, as a matter of law defendant cannot be liable for legal malpractice for failing to file a claim *** prior to December 23, 1989, the date the statute of limitations expired in this case."  
McGee
, 261 Ill. App. 3d at 237
.
(footnote: 6) 
 

The same result was reached in 
Harvey
:

"[C]ount I alleges defendant failed to file the lawsuit against Harris Bank within the appropriate statute of limitations.  ***  It is apparent that plaintiff had over one year to pursue any potential actions against Harris Bank after defendant withdrew as her attorney.  We find that count I was properly dismissed."  
Harvey
, 109 Ill. App. 3d at 587
.  
 

We observe that the cases relied upon by the Clifford defendants are not predicated upon a "viability" doctrine that would operate independently of the general negligence principles, but, in fact, are consistent with those principles.  These cases fall 
into two categories.  In the first category, 
Land
, 
Mitchell
 and 
Cedeno
 involved situations where the original attorney presumably breached his duty to the plaintiff by either performing an act with respect to the case incorrectly or by not performing it at all under the circumstances where the law imposed an affirmative duty to perform it.  However, the original attorney avoided liability because it was held that his negligence did not proximately cause the plaintiff's loss, as a matter of law.  More specifically, 
Land
 and 
Mitchell
 postulated that the involvement of a successor attorney at the point where harm to the client's cause of action could still be averted extinguished a malpractice action against the original negligent attorney.
 

In the second category, 
McGee
 and 
Harvey
, while distinguishable from the instant case, 
also applied ordinary negligence principles, but involved considerations different from those in 
Land
, 
Mitchell
 and 
Cedeno
.  In 
McGee
 and 
Harvey
 
it was held that the original attorney did not breach his duty of care in failing to file the plaintiff's action because reasonable time remained to allow the plaintiff to find a replacement attorney who would file the case.  In other words, the law did not impose a duty on the original attorney to file the plaintiff's action under such circumstances.  More importantly, it was never alleged in 
McGee
 and 
Harvey
 
that the original attorney 
gave incorrect advice to the client, especially of the kind that would underplay the urgency of promptly obtaining replacement counsel.  Here, on the other hand, although the Clifford defendants were not remiss in failing to file Lopez's wrongful death action, they did impart incorrect legal advice to their client which may very well have contributed to his failure to timely retain successor counsel.  Under the established negligence principles discussed earlier in this opinion, it is of no import that the breach of duty occurred in communicating with the client rather than with respect to the case itself
.  
However, 
the line of reasoning employed in 
Land
, 
Mitchell
 and 
Cedeno
 invokes the concept of superceding cause which breaks the chain of causation, so that a negligent actor is excused from liability.  Accordingly, we must examine whether a superceding cause operated here, so as to cut off the liability of the Clifford defendants.

Superceding cause and proximate cause are interrelated concepts.  With regard to proximate cause, we ordinarily ask:

"Was the defendant's negligence a material and substantial element in bringing about the injury, and, if so, was the injury of the type that a reasonable person would see as a likely result of his or her conduct?"  
First Springfield Bank & Trust v. Galman
, 188 Ill. 2d 252, 258-59, 720 N.E.2d 1068, 1072 (1999)
.

Where there are successive negligent actors, however, the negligence of the second actor, under certain circumstances, may be deemed a superceding cause—relieving the original negligent actor of liability
, as a matter of law.  
It would seem that the rule adhered to in 
Land
 and 
Mitchell
 is consistent with subsection (2) of section 452 of the Restatement (Second) of Torts (hereinafter the Restatement), which provides, under certain circumstances
, for the shifting of a duty of care from one negligent actor to another, with the corresponding shifting of liability, rather than holding both negligent actors jointly liable.  
Section 452, in its entirety, states:

"
(1) Except as stated in Subsection (2), the failure of a third person to act to prevent harm to another threatened by the actor's negligent conduct is not a 
superseding cause of such harm.

(2) 
Where, because of lapse of time or otherwise, the duty to prevent harm to another threatened by the actor's negligent conduct is found to have shifted from the actor to a third person, the failure of the third person to prevent such harm is a superseding cause.
"  
Restatement (Second) of Torts 
§
452 (1965)
.

Comment 
d
 to section 452 explains:

"
Subsection (2) covers the exceptional cases in which, because the duty, and hence the entire responsibility for the situation, has been shifted to a third 
person, the original actor is relieved of liability for the result which follows from the operation of his own negligence. The shifted responsibility means in effect that the duty, or obligation, of the original actor in the matter has terminated, and has been replaced by that of the third person.
"  
Restatement (Second) of Torts 
§452
, Comment 
d
 (1965).

Comment 
a
 to section 452 further clarifies:

"
The situation covered *** is that in which, after the original actor has been negligent and so has created an unreasonable risk of harm to another, a third person has the opportunity, by taking affirmative action, to avert the threatened harm. This implies that if such action were taken, it would prevent the negligence of the original actor from causing the harm which has in fact resulted.
"  
Restatement (Second) of Torts 
§452
, Comment 
a
 (1965).

In this regard, it is important to note that section 452(2) presupposes that its operation is not precluded by policy considerations or other rules of law.  See 
Restatement (Second) of Torts 
§452
, Comment 
e
 (1965) (the liability-shifting rule rests on an underlying assumption 
that there is no other rule of law and no reason of policy to prevent its applicability).

As discussed, our Illinois cases, 
Land
 and 
Mitchell
, 
appear to have taken the position consistent with section 452(2) of the Restatement
 that when the duty of care shifts from the original attorney to the successor, so does the liability, provided that the successor had the opportunity to undo or avert the harm precipitated by the actions or omissions of the original attorney.  We note that such liability-shifting approach has been challenged by the majority opinion in the California case of 
Cline v. Watkins
, 66 Cal. App. 3d 174, 135 Cal. Rptr. 838 (1977)
.  The court in 
Cline
 framed its inquiry as follows:

"Is the substitution of another lawyer for one whose prior representation of the client in the matter has been negligent such an exceptional circumstance that all duty and responsibility for the prevention of harm normally flowing from the negligence passes to substituted counsel?"  
Cline
, 66 Cal. App. 3d at 179, 135 Cal. Rptr. at 841.
 

In reliance on 
Comments 
a
 through 
e
 to section 452, the court concluded that the applicability of the liability-shifting provision of section 452 to the area of attorney malpractice turned on the issue of public policy.  See 
Cline
, 66 Cal. App. 3d at 179, 135 Cal. Rptr. at 841.
  
The court determined that the public policy in California favored joint liability, expressing that attorneys should not be entitled to special relief from liability that is not afforded to other professions, such as physicians:

"As a negligent physician is not relieved of the consequences of his lack of care because a subsequently treating physician could have avoided the injury had he not also been negligent [citation], so also should a negligent lawyer not be relieved because he is replaced by another.  True enough, the new lawyer assumes full responsibility for the matter and has exclusive control over it; but so also does the new physician assume full responsibility and have full control."  
Cline
, 66 Cal. App. 3d at 180, 135 Cal. Rptr. at 841-42.

However, we need not reexamine the rationale underlying the holdings in 
Land
 and 
Mitchell
 in light of 
Cline
 so as to redetermine whether the retention of a successor counsel should constitute a superceding cause, absolving the original counsel of liability, since in this case no successor counsel was retained before the statute of limitations actually ran.  
While the Clifford defendants look to Lopez's interim consultation with another attorney, Loran, that fact is of no avail because Loran did not undertake any representation in the Lopez wrongful death matter.  The cases relied upon by the Clifford defendants do not suggest that an attorney who declines to accept a case after a preliminary exploratory meeting with a prospective client assumes responsibility and corresponding liability for the preceding attorney's mistakes.  
The Clifford defendants assert that "[a]t minimum, Loran, by declining the case after consultation, was responsible for advising Lopez as to the exact amount of time remaining on the limitations period."  We disagree with this proposition. 
 We do not find any Illinois authority which would impose that burden upon an attorney on the strength of an exploratory meeting which did not result in an acceptance of the case.  Nor can such cursory involvement suffice to be characterized as a superceding cause so as to relieve the original attorney of liability for his mistakes and shift it to the shoulders of the second attorney.  Finally, we note that Loran's generic advice to Lopez that "all lawsuits are limited by a period prescribed by statute" 
was not inconsistent with Prindable's and could not have put Lopez on notice that a shorter period of limitations governed the wrongful death action—thereby breaking the chain of causation. 

In sum, 
unlike the plaintiffs in 
Land
, 
Mitchell
 and 
Cline
, Lopez did not retain a successor counsel until after the expiration of the statute of limitations, 
i.e.
, when the successor counsel could not have cured the problem created by the incorrect advice.  
This outcome, as discussed below, may well be attributable to Lopez's reliance on Prindable's very advice
.
 
 

For the foregoing reasons, 
since no superceding cause operated so as to defeat the Clifford defendants' liability as a matter of law, proximate cause in the instant case should be decided not as a matter of law, but by a trier of fact.  
See 
Abrams v. City of Chicago
, 211 Ill. 2d 251, 257, 811 N.E.2d 670, 674 (2004) (
the treatment of proximate cause as a question of law is an exception to the general rule that proximate cause is a fact-laden issue and should be decided by a trier of fact
); accord 
Public Taxi Service, Inc. v. Barrett
, 44 Ill. App. 3d 452, 456, 357 N.E.2d 1232, 1236 (1976).  The pertinent inquiry, as discussed, is whether the Clifford defendants' negligence was a material and substantial element in bringing about Lopez's and the estate's legal injuries ("cause in fact" component), and, if so, whether the injuries were of the type that a reasonable attorney would see as a likely result of his or her conduct ("legal cause" component).  See 
Galman
, 188 Ill. 2d at 258-59.

The Clifford defendants argue that, intervening superceding cause aside, the complaint and external submissions fail to allege cause in fact because they "indisputably" establish that Lopez in no way relied on Prindable's advice.  Additionally, the Clifford defendants argue that Prindable's contemporaneous advice to Lopez to "contact an attorney of your choice immediately ***.  Do not delay" 
was an antidote to the incorrect statute of limitations advice.
  It would seem that this latter argument goes to the reliance not being reasonable, as a matter of law.
(footnote: 7)  We disagree with both arguments. 
 In his complaint, Lopez, as noted, alleged
 that he reasonably relied on the Clifford defendants' advice.
  In addition, in his affidavit, Lopez stated:

"If I had known the statute of limitations in my daughter's case was one year, I would have obtained an attorney immediately after seeing Loran."

As discussed, Lopez's reliance on Prindable's parting advice was not unreasonable, as a matter of law.  Whether Prindable's advice, in its totality, gave Lopez an impression that he had 18 months, as opposed to 6, to retain another attorney and file the wrongful death action is for the trier of fact.  It would certainly not be unreasonable to conclude that although Lopez consulted with Loran within weeks of being dropped as a client by the Clifford firm, Prindable's advice caused Lopez to delay making an appointment with another counsel after being turned down by Loran.  Moreover, it is not unreasonable to conclude that this outcome was foreseeable to the Clifford defendants—thus satisfying the legal cause component of proximate cause.  The complaint, together with the affidavit supporting its allegations, is sufficient to create questions of fact as to these issues.  See 
Pothier v. Chicago Transit Authority
, 238 Ill. App. 3d 702, 710, 606 N.E.2d 531, 537 (1992) (the plaintiff's uncontradicted affidavit filed in response to a section 2-619 motion to dismiss—stating that she relied to her detriment on the defendant's representations—created a genuine issue of fact, defeating the motion to dismiss); 
Searcy v. Chicago Transit Authority
, 146 Ill. App. 3d 779, 784, 497 N.E.2d 410, 413 (1986) (In light of the statements in the plaintiff's affidavit, "it is at least arguable that the conduct and representations [of the defendant's agent] in this case lulled plaintiff into a false sense of security ***.  ***  Plaintiff reasonably may have relied upon [the agent's] conduct and representations to her detriment.  Under these circumstances, it was improper for the court to dispose of the issue *** as a matter of law").
 

Accordingly, because questions of fact exist as to causation
, the dismissal of the Clifford defendants was improper.  Consequently, the dismissal of King was improper as well since Lopez alleged that King had "agreed to assume the same legal responsibility for the performance of the legal services as the [Clifford firm]."
  On appeal, King does not dispute having assumed that responsibility and, instead, argues that he may not be held liable if the Clifford defendants are not liable.
  Our disposition of this matter with regard to the Clifford defendants precludes upholding King's dismissal.

For the reasons set forth above, we reverse t
he judgment of the circuit court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

CAHILL, P.J., and BURKE, J., concur.

FOOTNOTES
1:
The record shows that Lopez signed a representation agreement with the Clifford firm on March 8, 2001.  The agreement was attached as an exhibit to Lopez's response to the Clifford defendants' motion to dismiss.

2:
Filed on November 13, 2003.

3:
King raises substantially the same contentions on appeal as the Clifford defendants. 

4:
Under the prevailing law at the time, prior to the supreme court's decision in 
O'Connell v. St. Francis Hospital
, 112 Ill. 2d 273 (1986), it was possible to rescue an action by such means.

5:
The plaintiff failed to follow through on her appeal in the underlying personal injury action.

6:
Accord 
Garrett v. Lawyers Inc.
, 273 Ill. App. 3d 545, 550, 653 N.E.2d 48, 51 (1995) (the original attorney is not liable for not filing the action before the expiration of the statute of limitations where "defendants' and plaintiffs' attorney/client relationship ended sometime before April 1, 1991.  The claim was not time barred until August 17, 1991").

7:
In the event the Clifford defendants meant that Lopez was contributorily negligent
, the question of Lopez's contributory negligence is still for the trier of fact.
  See 
McCarthy v. Kunicki
, 355 Ill. App. 3d 957, 972, 823 N.E.2d 1088, 1101 (2005) ("[o]rdinarily, it is the jury's responsibility to consider whether plaintiff's actions amounted to contributory negligence").