Filed 10/23/15  Satnick v. Kanin CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LORI J. SATNICK,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>PAUL R. KANIN et al.,<br><br>  Defendants and Respondents. | B259826<br>(Los Angeles County<br>Super. Ct. No. BC519927) |
| LORI J. SATNICK,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>BAY SHERMAN & CRAIG LLP et al.,<br><br>  Defendants and Respondents. | B261665<br>(Los Angeles County<br>Super. Ct. No. BC519927) |

APPEALS from judgments of the Superior Court of Los Angeles County, Mark V. Mooney, Judge.  Affirmed.

Law Offices of John Belcher, John A. Belcher and Nicholas W. Song for Plaintiff and Appellant.

Nemecek & Cole, Jonathan B. Cole, Claudia L. Stone and Mark Schaeffer for Defendants and Respondents Paul R. Kanin and Paul R. Kanin, Inc.

Meyers McConnell Reisz Siderman, Frederick S. Reisz and Kenton L. Robinson for Defendants and Respondents Bay Sherman & Craig LLP and Harold Jaffe.

_____

Lori J. Satnick, following her divorce, sued the lawyers, Paul R. Kanin and Paul R. Kanin, Inc. (collectively, Kanin), and the accountants, Harold Jaffe and Bay Sherman & Craig LLP (collectively BSC), who had provided professional services to her and her husband, Lane Satnick[1] during the course of their marriage.

In her lawsuit, Lori claimed that Kanin and BSC had participated in a scheme during her marriage and during her divorce proceeding to deprive the marital community of certain assets (shares of stock in her husband's family business) and distributions related to those assets by diverting those assets and distributions into Lane's separate accounts. In her complaint, Lori alleged two causes of action against each set of defendants: professional malpractice and breach of fiduciary duty. Separately, the two sets of defendants filed similar motions for summary judgment, each of them arguing in the main that Lori could not show that they had caused her any damages. The trial court granted summary judgment as a matter of law to each set of defendants. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. The Shares of the Company

Lori and Lane were married in 1984. During their marriage, Lane acquired 51 shares (or 51 percent) of Kobert & Company, Inc, also known as L.H. Dottie Company (the Company). The Company manufactures various products, including electrical, construction, plumbing, and security-related products. The Company was founded in 1959 by Lane's father and grandfather. When his father passed in 2002, Lane became

_____

[1] We refer to the Satnicks by their first names for sake of clarity, intending no disrespect.

2

president of the Company. In 2012, following his separation from Lori, Lane became chief executive officer of the Company.

Lane did not acquire his shares of the Company all at once; rather he acquired them over time in three phases. First, he acquired 17 shares in 1993 as a gift from his parents. Second, in 2000, Lane purchased 16 shares from his sister. And third, in 2002, following the death of his father, he purchased 18 more shares from his mother. Lane paid for the shares that he purchased from his sister and mother using funds from his separate checking account, funds which he acquired via distributions from the Company.

## II. Transfer of the Shares into Trusts during the Marriage

In 1996, Lori and Lane created the Lane David Satnick and Lori Jo Satnick Family Trust (Trust No. 1). Trust No. 1, inter alia, provided that the transfer of assets to the trust would not change the character of those assets, that is community property would remain community property and separate property would remain separate property. Lane transferred the 17 shares he had received as a gift from his parents into Trust No. 1 in 1996. In 2002, the 16 shares that Lane had purchased from his sister and the 18 shares that he had purchased from his mother were transferred into Trust No. 1.

In 2008, the 51 shares of the Company were transferred into a new trust prepared by Kanin for Lori and Lane, the Satnick L.H. Dottie Trust (Trust No. 2). As with Trust No 1, the transfer of property into Trust No. 2, by its terms, would not alter the property's character; community property would remain community and separate property would remain separate property.

## III. Dispute over the Shares' Character During the Dissolution Proceeding

Lori and Lane separated in 2011. In the resulting divorce proceeding, the parties (neither of whom were represented by Kanin) disagreed over the character of the shares and the related distributions, with Lori contending that the shares were community property and Lane arguing that they were separate property.

The dispute over the proper characterization of the shares was, in Lori's words, "extensively litigated" in the divorce proceedings. In order to overcome the presumption that property obtained during marriage is community property (Fam. Code, § 760), Lane

3

retained a forensic accountant, Stephen Wasserman, to prepare reports tracing all assets of the marital estate. These tracing reports were provided to Lori's forensic accountants (not BSC),[2] who in turn requested that Wasserman prepare three alternative tracing reports (Versions A, B, & C) with each alternative report utilizing different assumptions about the character of the shares that Lane purchased from his sister and mother. In the alternative tracing report that was most favorable to Lori (Version C)—which assumed that all 34 shares that Lane purchased from his sister and mother were community property—$9.3 million was allocated to Lane as his separate property and $12.2 million allocated to the community, with Lori receiving under that scenario $6.1 million.

In July 2012, the parties, with the assistance of a mediator, reached a settlement in their divorce proceeding. Under the terms of the settlement, all 51 shares of the Company were "awarded to Lane as his sole and separate property." In total, Lori received cash and assets valued at a $6,042,239. Among other things, Lori received a cash payment from Lane of $3,697,740. Lane made a cash payment to Lori, in part, "to compensate her for the community's [alleged] interest" in the Company shares; in other words, "Lane paid Lori a lump sum settlement to buy her out of the shares she claimed she owned."

According to Lane, he entered into the settlement even though he "believed that Lori did not have any community property interest in [his] shares of [the Company] stock or [his] distributions from th[e] [C]ompany"; he did so "in order to resolve the Marital Dissolution Action." According to Lane, this was the best settlement agreement Lori could have negotiated as he "would not have agreed to a settlement more favorable to Lori."

In October 2012, the settlement was confirmed in a judgment of dissolution.

---

[2] Lane paid for Lori's forensic accountants, as well as for Wasserman in the divorce action.

## IV.  Lori's Lawsuit

In August 2013, Lori sued Kanin and BSC for professional malpractice and breach of fiduciary duty.  The defendants were alleged to have caused or facilitated the diversion of not only the shares of the Company but also Lane's salary from the Company and the dividends from his shares of the Company.  Lori also alleged that defendants "actively worked to undermine [her] claim to the marital property during her divorce proceedings."  Because of this alleged misconduct, Lori was purportedly "forced to incur expenses to attempt to trace the diversion of community funds"; her efforts in this regard were allegedly unsuccessful due to defendants' purported misconduct.  As a result of defendants' alleged misconduct, Lori argued that she was forced to settle "for far less than [her] share of the 'true' community assets."

### A.  Kanin's Motion for Summary Judgment

In June 2014, Kanin moved for summary judgment.  Without conceding that it breached any alleged duty owed to Lori, Kanin sought summary judgment on the related issues of causation and damages.  Among other things, Kanin argued that Lori was not damaged by any alleged diversion of the shares because (a) there was no diversion of the disputed shares—they were transferred to Trust Nos. 1 and 2—and (b) Lori was "fully compensated for her claimed community property interest" in the disputed Company shares in the divorce proceeding and that there was "no evidence that [she] would have obtained any more for the shares in settlement of the underlying marital dissolution action than she eventually received."  Kanin's argument was premised on the fact that in the divorce action, Lori received assets valued at $6.042 million, which was very nearly the $6.1 million that Wasserman's analysis suggested would be Lori's share of the community under the most favorable of circumstances—that is, if the 34 shares that Lane purchased from his sister and mother were considered community assets.  On a related point, Kanin also argued that it did not cause any damage to Lori with respect to untraced distributions from Lane's shares in the Company because those distributions were in fact traced by Wasserman and that all such tracing work was paid for by Lane, not Lori.  In making these arguments, Kanin relied on a declaration by Wasserman with supporting

exhibits. Wasserman was subsequently designated by Kanin as one of its retained experts.

Lori opposed Kanin's motion, arguing that causation was an issue of fact reserved for the jury. Even though Lori's forensic accountants had apparently "vigorously challenged" Wasserman's analysis during the divorce action, she did not offer any rebuttal testimony from them or from any other witness.[3] What little evidence Lori did

---

[3] In her separate statement in opposition to Kanin's motion, Lori objected generally to the Wasserman evidence. Kanin responded to Lori's objections by arguing that the Wasserman tracing reports were prepared prior to the parties' mediation and were voluntarily offered to Lori as settlement communications; as a result, the tracing reports and Wasserman's testimony about those reports were admissible in the instant action because they were being offered for the purpose of proving facts other than Lane's liability. However, it does not appear that Lori filed any separate and specific written objections to the Wasserman evidence prior to the hearing as she was required to do. (Cal. Rules of Court, rule 3.1354; *Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 8–9.) No such objections are found in the clerk's transcript nor did Lori request that any such objections be included in the clerk's transcript. Moreover, Lori did not object to the admissibility of the Wasserman evidence at the hearing on Kanin's motion. By not filing separate written objections and by not objecting at the hearing, Lori waived any objections she might have had to the Wasserman evidence. (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 531–532.) On appeal, Lori does not contest the admission of the Wasserman evidence submitted in support of Kanin's motion.

On a related matter, Lori did request a continuance to take Wasserman's deposition, which Kanin opposed. There is, however, nothing in the record to show whether the trial court ruled on or even considered Lori's request. For example, the issue was not addressed at the hearing on Kanin's motion. On appeal, however, Lori does not challenge the apparent denial of her request for a continuance.

Even if Lori had challenged that decision, we would not find that the trial court abused its discretion in denying a continuance. (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1038.) Kanin's motion and the supporting declaration by Wasserman were filed and served on June 20, 2014. Lori, however, did not attempt to notice Wasserman's deposition until sometime after Wasserman was designated as an expert witness on August 18, 2014. In other words, instead of taking immediate steps to depose Wasserman after receiving Kanin's motion, Lori waited two months to noticed his deposition. Moreover, Lori noticed Wasserman's deposition for September 8, 2014— four days *after* the scheduled hearing date for Kanin's motion. A lack of diligence in seeking discovery is appropriate grounds for denying a request to continue the hearing on

present was directed, not to the related issues of causation and damages, but to whether the shares Lane acquired from his sister and mother were purchased with "community credit."[4]

On September 4, 2014, the trial court heard and granted Kanin's motion, reasoning that the divorce settlement "encompassed all" of the issues raised by Lori in her complaint and that, as a result, Lori failed to identify a triable issue of material fact with respect to causation or damages. A judgment in favor of Kanin was entered on October 6, 2014. Lori filed a timely notice of appeal on October 31, 2014.

## B.     BSC's Motion for Summary Judgment

On September 23, 2014, BSC filed a motion for summary judgment, which, like Kanin's motion, was premised on Lori's inability to show causation and damages. As with the Kanin motion, BSC relied on the Wasserman analysis done during the divorce action. As Lori did with the Kanin motion, she focused her opposition on facts related to the issue of breach, while electing to rebut the grounds for the motion (no facts establishing causation and damages) with only a legal argument—that is, she confined her response to arguing that causation is a jury question.[5]

_____

a summary judgment motion. (*Id.* at pp. 1038–1039 & fn. 7 [affirming denial because "counsel apparently did nothing for more than two months after the motion was filed"].) In short, Lori did not act with the requisite diligence to justify a continuance.

**4** Kanin objected to the evidence upon which Lori's "community credit" arguments were based and those objections were sustained by the trial court. On appeal, Lori does not challenge those evidentiary rulings.

**5** Lori did file specific and separate written objections to BSC's use of the Wasserman evidence, but those objections were overruled. Lori's objections were overruled because they were "untimely." Unless excused by the court for good cause, "all" written objections to summary judgment evidence must be filed and served at the same time as the objecting party's responsive papers. (Cal. Rules of Court, rule 3.1354(a).) Lori filed her opposition on November 26, 2014. However, she did not file her written evidentiary objections until December 10, 2014—one day before the hearing on BSC's motion. The trial court overruled Lori's objections on December 11, 2014, the day of the hearing. On appeal, Lori does not challenge the trial court's ruling with regard to the admissibility of the Wasserman evidence submitted in support of BSC's motion.

On December 22, 2014, the trial court granted BSC's motion and later that same day entered a judgment in favor of BSC. Lori filed a timely notice of appeal on January 28, 2015.

On September 15, 2015, after the briefing in both appeals had been completed, this court ordered that the two appeals be consolidated for oral argument and disposition.

## DISCUSSION

### I. Standard of Review

"On appeal, we review the trial court's decision to grant or deny the summary judgment motion de novo, on the basis of an examination of the evidence before the trial court and our independent determination of its effect as a matter of law." (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163 (*Sangster*).) "In independently reviewing a motion for summary judgment, we apply the same three-step analysis used by the superior court. We identify the issues framed by the pleadings, determine whether the moving party has negated the opponent's claims, and determine whether the opposition has demonstrated the existence of a triable, material factual issue." (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261.) "We are not bound by the trial court's stated reasons or rationale. Instead, we review the summary judgment without deference to the trial court's determination of questions of law." (*Sangster*, at p. 163.) "We may consider only those facts which were before the trial court, and disregard any new factual allegations made for the first time on appeal. Thus, unless they were factually presented, fully developed and argued to the trial court, potential theories which could theoretically create 'triable issues of material fact' may not be raised or considered on appeal." (*Ibid.*)

### II. The Parties' Respective Burdens on Summary Judgment

The Code of Civil Procedure "[s]ection 437c, subdivision (c) *requires* a trial court to grant summary judgment if all the papers and affidavits submitted, together with 'all inferences reasonably deducible from the evidence' and uncontradicted by other inferences or evidence, show that 'there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .'" (*Sangster*, *supra*, 68 Cal.App.4th at p. 161.)

8

Where the defendant is the moving party, he or she may meet the burden of showing that a cause of action has no merit by proving, inter alia, "[o]ne or more elements of the cause of action cannot be separately established . . . ." (Code Civ. Proc., § 437c, subd. (*o*)(1).) "In other words, all that the defendant need do is to show that the plaintiff cannot establish at least one element of the cause of action—for example, that the plaintiff cannot prove element X." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 853–854.) A defendant moving for summary judgment may establish that an essential element of the plaintiff's cause of action is absent by reliance on competent declarations, binding judicial admissions contained in the allegations of the plaintiff's complaint, responses to discovery, and the testimony of witnesses at noticed depositions. (§ 437c, subd. (b)(1).) "Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (§ 437c, subd. (p)(2).)

The plaintiff opposing a motion for summary judgment may not rely on his or her pleadings alone, but must file an opposition to the motion, with affidavits or declarations setting forth "specific facts" demonstrating that a triable issue of material fact exists as to the cause of action. (Code Civ. Proc., § 437c, subd. (p).) "[I]n order to avert summary judgment the plaintiff must produce *substantial* responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing. [Citations.] For this purpose, responsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact." (*Sangster*, *supra*, 68 Cal.App.4th at pp. 162–163, italics added.) Moreover, an opposition that contains no evidence, but simply asserts a right to jury trial on the issues involved, is insufficient to avoid summary judgment. (*Shepherd v. Jones* (1982) 136 Cal.App.3d 1049, 1062.) In opposition to motions for summary judgment, courts reject "naked arguments"—that is, arguments offered without the benefit of any "evidentiary assistance," just the assertion that, because a jury might "'disbelieve'" the uncontroverted evidence submitted in support of the motion, the defendant is entitled to

go to trial. (*Imperial Casualty & Indemnity Co. v. Sogomonian* (1988) 198 Cal.App.3d 169, 181.)

## III.    Causation is an Essential Element for Professional Malpractice and Breach of Fiduciary Duty Claims

"'In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.]' [Citation.] Significantly, '"[i]f the allegedly negligent conduct does not cause damage, it generates no cause of action in tort. [Citation.] . . ."'" (*Moua v. Pittullo, Howington, Barker, Abernathy*, LLP (2014) 228 Cal.App.4th 107, 112–113 (*Moua*).)

Similarly, causation is a required element in an action for accountant malpractice: "'The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence.'" (*Mattco Forge, Inc. v. Arthur Young & Co*. (1997) 52 Cal.App.4th 820, 833 (*Mattco Forge*).)

Although breach of fiduciary duty is a species of tort distinct from a cause of action for professional negligence, it too requires causation: "The elements of a cause of action for breach of fiduciary duty are: (1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach." (*Stanley v. Richmond* (1995) 35 Cal.App.4th 1070, 1086 (*Stanley*).)

In tort claims, such as the ones on appeal, "California has definitely adopted the substantial factor test . . . for cause-in-fact determinations. [Citation.] Under that standard, a cause in fact is something that is a substantial factor in bringing about the injury." (*Rutherford v. Owens–Illinois, Inc*. (1997) 16 Cal.4th 953, 968–969; see *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1239–1244 (*Viner*) [applying substantial factor test in

10

legal malpractice action]; *Mattco Forge*, *supra*, 52 Cal.App.4th at pp. 832–834 [applying substantial factor test in professional malpractice action against accounting firm]; *Stanley*, *supra*, 35 Cal.App.4th at p. 1095 [applying substantial factor test in breach of fiduciary duty action].)  "'[T]he question of proximate cause . . . becomes one of law where the facts are uncontroverted and only one deduction or inference may reasonably be drawn therefrom.'" (*Moua*, *supra*, 228 Cal.App.4th at p. 113.)

Where a plaintiff alleges that a professional's breach of duty in connection with a prior legal action caused him or her injury, the plaintiff "must show that *but* for the alleged malpractice, it is more likely than not that the plaintiff would have obtained a more favorable result." (*Viner*, *supra*, 30 Cal.4th at p. 1244.)  For example, "[a] plaintiff alleging legal malpractice in the prosecution or defense of a legal claim must prove that, but for the negligence of the attorney, a better result could have been obtained in the underlying action.  [Citation.]  The purpose of this methodology is to avoid damages based on pure speculation and conjecture." (*Orrick Herrington & Sutcliffe v. Superior Court* (2003) 107 Cal.App.4th 1052, 1057 (*Orrick*).)  The same is true for a plaintiff alleging a breach of duty by an accountant in connection with a prior legal action. (*Mattco Forge*, *supra*, 52 Cal.App.4th at p. 837 [holding "trial-within-a-trial" standard of proof is also applicable to claims of accountant malpractice].)  As our Supreme Court, citing with favor to *Mattco Forge*, has explained, "In a litigation malpractice action, the plaintiff must establish that *but for* the alleged negligence of the [professional], the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred.  The purpose of this requirement, which has been in use for more than 120 years, is to safeguard against speculative and conjectural claims.  [Citation.]  It serves the essential purpose of ensuring that damages awarded for the [professional]'s malpractice actually have been caused by the malpractice." (*Viner*, at p. 1241.)

11

**IV.  Defendants are Entitled to Summary Judgment Because They Met Their Evidentiary Burden and Lori Did Not**

Lori's core allegation against Kanin and BSC is that as a result of their alleged misconduct she was forced to settle "for far less than [her] share of the 'true' community assets" in the divorce proceeding.  In their motions for summary judgment both defendants relied on the analysis by Wasserman to show that Lori's divorce settlement would not have been meaningfully greater had the 34 shares that Lane purchased from his sister and mother been characterized as community property.  The difference between the $6.042 million that Lori received from the divorce settlement was less than one percent smaller than the $6.1 million that Wasserman's analysis suggested she would receive as her share of the community property under the most favorable of circumstances.  In addition, the defendants relied upon the fact that Lane paid Lori $3,697,495 in cash, in part, "to compensate her for the community's [alleged] interest" in the disputed shares.  In the divorce settlement, Lori agreed that there was "substantial evidence to support the finding[]" that the disputed shares of the Company were Lane's separate property.  Moreover, Lane submitted a declaration stating that the divorce settlement was the best result Lori could have negotiated as he "would not have agreed to a settlement more favorable to Lori."  This fact alone was sufficient to shift the burden to Lori.  (*Namikas v. Miller* (2014) 225 Cal.App.4th 1574, 1584 (*Namikas*).)

In other words, Kanin and BSC met their burden to show that an essential element of Lori's causes of action— causation— was absent.  As a result, the evidentiary burden shifted to Lori to show, by specific and substantial evidence, that a triable issue of fact existed as to whether the defendants' alleged misconduct caused her to suffer any damages.  The trial court properly granted summary judgment to the defendants because Lori failed to meet her burden.

**A.  Lori's Lack of Evidence**

Lori did not present any evidence, direct or circumstantial, that she would have obtained any more for the disputed shares in the settlement of the underlying marital dissolution action than she actually received.  The best, indeed, the only evidence that she

12

offered challenging defendants' evidence is a statement in her declarations that "[t]here was never any judicial determination [in the divorce action] that Mr. Wasserman's analysis was valid." The converse, however, is also true—that is, there was never any judicial determination in the divorce action that Mr. Wasserman's analysis was invalid. In the absence of such a determination, it was incumbent on Lori to put forth substantial evidence controverting Wasserman's analysis. While declarations opposing motions for summary judgment are to be liberally construed (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768), an opposing party cannot controvert the moving party's declarations by evidence "based on speculation, imagination, guess work, or mere possibilities." (*Doe v. Salesian Society* (2008) 159 Cal.App.4th 474, 481; see *King v. United Parcel Service, Inc*. (2007) 152 Cal.App.4th 426, 433 ["plaintiff's subjective beliefs . . . do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations"].) At best, Lori's statement about the Wasserman evidence in her declarations was equivocal and equivocal evidence is insufficient to show a triable question of fact. (*Ahrens v. Superior Court* (1988) 197 Cal.App.3d 1134, 1152.)

In short, because Lori did not produce any evidence, let alone substantial evidence, that she would have obtained a better settlement in the divorce action but for the alleged misconduct by Kanin and BSC, she failed to meet her burden in opposing defendants' motions for summary judgment. (*Orrick*, *supra*, 107 Cal.App.4th at p. 1058 [summary adjudication proper where plaintiff produced "no evidence his ex-wife would have agreed to a settlement that included the terms he claims were [negligently] omitted"].)

## B. Lori's Flawed Legal Argument

Lori cannot escape her evidentiary burden by arguing that causation is a fact question. Although causation is ordinarily a question of fact, it is well established that the issue "may be decided as a question of law if the undisputed facts permit only one reasonable conclusion." (*Slovensky v. Friedman* (2006) 142 Cal.App.4th 1518, 1528; see *Sabella v. Wisler* (1963) 59 Cal.2d 21, 31.)

13

For example, in *Namikas*, *supra*, 225 Cal.App.4th 1574, a husband brought a "'settle and sue'" case against his family law attorney, alleging that as a result of his attorney's purported negligence the husband was forced to pay excessive support to his ex-wife. (*Id*. at pp. 1577–1578.) The trial court granted summary judgment to the defendant lawyer on causation and damages and the Court of Appeal affirmed because there was nothing in the record to show that the ex-wife would have settled for a lower amount or that the husband would have received a better outcome at trial. (*Id*. at pp. 1583–1588.) In reaching its decision the court in *Namikas* discussed the heavy burden faced by a plaintiff, such as Lori, who brings a settle and sue action: "'[t]he requirement that a plaintiff need prove damages to "a legal certainty" is difficult to meet in any case. It is particularly so in "settle and sue" cases . . . ,' which are inherently speculative. [Citation.] '[T]he amount of a compromise is often "an educated guess of the amount that can be recovered at trial and what the opponent was willing to pay or accept. Even skillful and experienced negotiators do not know whether they received the maximum settlement or paid out the minimum acceptable."'" (*Id*. at pp. 1582–1583.)

Similarly, in *Marshak v. Ballesteros* (1999) 72 Cal.App.4th 1514, a husband sued his attorney for malpractice, claiming that his attorney had advised him to settle his divorce action for "'less than the case was worth.'" (*Id*. at p. 1516.) The trial court granted summary judgment to the attorney due to plaintiff's failure to prove that his ex-wife would have settled for less than she did. The Court of Appeal affirmed, stating: "In order to prevail in his legal malpractice action, plaintiff must prove that the dissolution action would have resulted in a better outcome had defendant recommended that he reject the settlement offer. Plaintiff *must prove what that better outcome would have been.* (*Id*. at p. 1518, italics added.) "Here, plaintiff simply alleges that the case was worth more than he settled it for. He proffered no evidence to establish the value of his case, other than his own declaration that the family residence was worth more, and the accounts receivable were worth less, than they were valued at for the purposes of settlement. Even if he were able to prove this, however, he would not prevail. For he must *also* prove that his ex-wife would have settled for less than she did, or that, following trial, a judge would

14

have entered judgment more favorable than that to which he stipulated. Plaintiff has not even intimated how he would establish one or the other of these results with the certainty required to permit an award of damages." (*Id*. at p. 1519.)

Here, as discussed above, Lori did not offer any evidence (other than her own declaration) that but for defendants' alleged misconduct she would have had a better outcome in the divorce action. Because the undisputed facts permit only one reasonable conclusion, we affirm the trial court's decision to grant summary judgment to both Kanin and BSC.

## V.      Defendants' Other Arguments are Without Merit

Defendants argue that they were entitled to summary judgment for reasons other than Lori's failure to present substantial evidence that "but for" their alleged misconduct she would have done better in her divorce proceeding. Specifically, defendants argue that Lori's claim was barred by either the doctrine of judicial estoppel or the doctrine of res judicata. We find these arguments to be without merit.[6]

### A.      Lori's Claim was Not Barred by Judicial Estoppel

Kanin and BSC argued below (and Kanin on appeal) that the doctrine of judicial estoppel barred Lori's claim that she was injured in the divorce action by an alleged inability to trace assets that she believed belonged to the community. Although the trial court found this argument to be "compelling," we are not so persuaded. "'Judicial estoppel prevents a party from asserting a position in a legal proceeding that is contrary

---

[6] BSC also contends for the first time on appeal that Lori's breach of fiduciary duty claim is time-barred due to Lori's alleged failure to seek to vacate the divorce judgment within one year. As a general rule, theories not raised in the trial court cannot be asserted for the first time of appeal. The reason for this general rule is basic fairness— it would be inequitable to consider a new theory where the opposing party "was [not] reasonably put on notice to present all its evidences," especially where, as here, the new theory contemplates a factual situation "open to controversy." (*Richmond v. Dart Industries, Inc*. (1987) 196 Cal.App.3d 869, 879.) Because consideration of this new theory is an issue is within our discretion, we are not required to consider BSC's theory, even if it raised a pure question of law. (*Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767.) We decline to consider this new theory.

15

to a position previously taken in the same or some earlier proceeding. The doctrine serves a clear purpose: to protect the integrity of the judicial process.'" (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 181.) The doctrine applies when "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." (*Id*. at p. 183.) Judicial estoppel does not apply here for three reasons. First, it is not at all evident that Lori that took the position in the divorce proceeding that all community assets were correctly traced. In the divorce settlement, Lori merely agreed that she had been given an opportunity to investigate and analyze the tracing issue and that she had decided to settle rather than proceed to trial. Second, it is not at all clear that Lori was successful in asserting her purported position on the tracing issue in the divorce proceeding—parties settle lawsuits for a wide array of reasons, including "reasons not necessarily related to [their] merits." (*People v. Fuiava* (2012) 53 Cal.4th 622, 723.) Third, her claim in this action (as we understand it) is that even if she did take the position in the divorce action that all community assets were correctly traced, her position was the result of defendants' alleged misconduct and, as a result, it is subject to challenge in this proceeding.

## B. Lori's Claim was Not Barred by Res Judicata

BSC argued below and on appeal that Lori's claims are barred by the doctrine of res judicata. We find this argument unconvincing. Under California law, "'"[t]he doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy."'" (*Boeken v. Philip Morris USA, Inc*. (2008) 48 Cal.4th 788, 797.) "Res judicata precludes the relitigation of a cause of action only if (1) the decision in the prior proceeding is final and on the merits; (2) the present action is on the same cause of action as the prior proceeding; and (3) the parties in the present action or parties in privity with them were parties to the prior proceeding." (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 82.) The judgment in the divorce action was

16

not on the merits, but based on a settlement between Lori and Lane, not between Lori and the defendants here. Moreover, even if BSC can be considered to be in privity with Lane, Lori's claims for professional negligence and breach of fiduciary duty against BSC were not litigated in the divorce action. Accordingly, res judicata is not applicable here.

## DISPOSITION

The judgments are affirmed. The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED.


JOHNSON, J.


We concur:


CHANEY, Acting P. J.


LIU, J.

17